1
2
3
4                       UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6

United States District Court
Northern District of California

DANIEL NORCIA, on his own behalf and
on behalf of all other similarly situated,

                    Plaintiff,

        v.

SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC, et al.,

                    Defendants.

Case No.  14-cv-00582-JD

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW, AND ORDER
DENYING MOTION TO COMPEL
ARBITRATION**

Re: Dkt. No. 18

## INTRODUCTION

In this putative class action under California state law, named plaintiff Daniel Norcia alleges that the Samsung Galaxy S4 phone he bought from Verizon in 2013 does not have the performance, speed and memory storage capacity Samsung advertised.  Samsung contends that Mr. Norcia agreed to arbitrate this dispute under terms contained in Samsung's warranty for the phone, and moved to compel arbitration.  Mr. Norcia claimed that he had never received the warranty booklet containing the arbitration provision because the Verizon salesperson had unboxed the phone and handed the phone to Mr. Norcia without the packaging that contained the warranty booklet.

Because the parties disputed the formation of an agreement to arbitrate, the Court held a bench trial to resolve the issue.  The Court concludes that no arbitration agreement was formed between Samsung and Mr. Norcia.  Although the facts establish that Mr. Norcia voluntarily declined the box and must therefore be treated as though he received it and the warranty booklet, the inconspicuous placement of the arbitration provisions in the warranty booklet, and Samsung's failure to inform consumers in any way about the proposal to require arbitration, bar a finding that a valid and enforceable contract to arbitrate was formed.

**BACKGROUND**

Samsung manufactured the Galaxy S4 cell phone that Mr. Norcia owns and uses on Verizon's wireless network.  The class action complaint alleges that Samsung[1] engaged in manipulative acts and misrepresentations relating to the Galaxy S4's speed, performance and memory capacity.  Dkt. No. 1.  Among other things, the complaint alleges that Samsung "intentionally programmed the Galaxy S4 to fool benchmark apps and to create false perceptions regarding the speed and performance of these devices."  *Id*. ¶ 2.

In lieu of an answer, Samsung moved to compel arbitration of the dispute, invoking an arbitration provision contained in its own warranty for the phone.  Dkt. No. 18.  Mr. Norcia claimed in opposition that he had never seen nor been made aware of the arbitration provision and had not agreed to it, and that he should therefore not be bound by it.  Dkt. No. 20.  Finding "the making of the arbitration agreement . . . [to] be in issue," the Court summarily proceeded to a bench trial on this issue as directed by the Federal Arbitration Act, 9 U.S.C. § 4.  Dkt. No. 33.

The Court now makes the following findings of fact and conclusions of law based on the bench trial, and denies defendants' motion to compel arbitration for lack of contract formation.

**FINDINGS OF FACT**

The following facts that are relevant to this order were established at the bench trial:[2]

1.      Mr. Norcia purchased his Galaxy S4 phone from a Verizon store in San Francisco, California on May 23, 2013.  He stopped in the store on his way to work in the morning, and he knew exactly which phone he wanted to buy -- *i.e.*, the Galaxy S4 ("S4").  Mr. Norcia had been a long-time Verizon customer, and he purchased the S4 as an "upgrade."

---

[1] There are two named defendants -- Samsung Telecommunications America, LLC and Samsung Electronics America, Inc. -- but the parties have not drawn any distinctions between the two in connection with the pending motion to compel arbitration.  The Court consequently treats them as singular and refers to them together as "Samsung" in this order.

[2] This order will not cite to the record, finding it unnecessary and cumbersome to do so, except in instances where citation may be of particular utility.  *See N. Cal. River Watch v. City of Healdsburg*, No. C01-04686WHA, 2004 WL 201502, at *1 n.1 (N.D. Cal. Jan. 23, 2004).

United States District Court
Northern District of California

2.      Mr. Norcia's time in the store was brief -- about ten minutes -- and he interacted with just two Verizon employees.  First, there was a greeter at the door, to whom Mr. Norcia stated his desire to purchase an S4 phone.

3.      Another Verizon employee then got the phone and brought it to Mr. Norcia.  She unpacked the phone, and helped Mr. Norcia transfer his contacts, among other things.  Transcript, Dkt. No. 34 ("Tr.") at 73:17-74:4.  She also operated the cash register to complete the transaction. *Id*. at 66:13-67:5.

4.      At the end of the transaction -- after the phone had already been unpacked by the second Verizon employee -- Mr. Norcia "picked up the phone charger, the headphones, and the earbuds that came with it, and then [he] left."  *Id*. at 74:7-8.

5.      The Verizon employee offered to give Mr. Norcia the box that his phone had come in, but he "declined."  *Id*. at 74:9-10.  He felt that he knew how to use this kind of phone (an "Android" phone), and he was in a hurry to get to work.  *Id*. at 96:8-15, 101:14-19.

6.      The outside of the box for the S4 indicates that the "Package Contains" a "Product Safety & Warranty Brochure."  Trial Exhibit ("Tr. Ex.") 101.

7.      Inside of the box, there is a 101-page booklet entitled "Product Safety & Warranty Information."  Tr. Ex. 102 ("warranty booklet").  Information on the phone's warranty begins on page 70 of the booklet, and includes the following language:

### Standard Limited Warranty

**What is covered and for how long?**
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC
("SAMSUNG") warrants that SAMSUNG's handsets and
accessories ("Products") are free from defects in material and
workmanship under normal use and service for the period
commencing upon the date of purchase by the first consumer
purchaser and continuing for the following specified period of time
after that date:

Phone                                              1 Year

. . .

**What is the procedure for resolving disputes?**
ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY
FROM THIS LIMITED WARRANTY OR THE SALE,
CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL

BE RESOLVED EXCLUSIVELY THROUGH FINAL AND
BINDING ARBITRATION, AND NOT BY A COURT OR JURY.

. . .

**You may opt out of this dispute resolution procedure by
providing notice to SAMSUNG no later than 30 calendar days
from the date of the first consumer purchaser's purchase of the
Product.  To opt out, you must send notice by e-mail . . . .
Alternatively, you may opt out by calling . . . .  These are the
only two forms of notice that will be effective to opt out of this
dispute resolution procedure.  Opting out of this dispute
resolution procedure will not affect the coverage of the Limited
Warranty in any way, and you will continue to enjoy the
benefits of the Limited Warranty.**

8.     Mr. Norcia saw the box, but he did not see the warranty booklet at the time of

purchase.  Tr. at 97:14-17, 97:21-98:1.

9.     No Verizon employee informed Mr. Norcia about Samsung's product warranty or

that it contained an arbitration provision.  Tr. at 111:21-112:15.

10.     Mr. Norcia signed two receipts provided by Verizon:  one entitled a "Customer

Agreement" and the other an "Equipment Receipt," both of which were e-mailed to him shortly

after his purchase.  Tr. Exs. 113 & 1; Tr. at 103:3-6.  The Customer Agreement references a

"1 YR. MFG. WARRANTY" as an "Item," but neither receipt makes express reference to

Samsung's warranty, Samsung's Product Safety & Warranty Information booklet, or to the

arbitration provision contained in it.

11.     The Verizon receipt that is labeled as the "Customer Agreement" identifies an

arbitration provision proposed by Verizon itself in capitalized letters in a section captioned

"Agreement" that appears above a blank line for the customer to sign.  Tr. Ex. 113 ("I AGREE TO

THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT . . . .  I UNDERSTAND

THAT I AM AGREEING TO . . . SETTLEMENT OF DISPUTES BY ARBITRATION AND

OTHER MEANS INSTEAD OF JURY TRIALS, AND OTHER IMPORTANT TERMS IN THE

CUSTOMER AGREEMENT.").  Under the line provided for the "Account Owner Signature"

(which Mr. Norcia signed), the receipt states:  "Contract Acceptance Date: 5/23/2013[.]  Thank

You!"  *Id*.  The receipts do not refer to or mention the Samsung arbitration provision.

United States District Court
Northern District of California

4

1    12.    Samsung maintained, at the time of Mr. Norcia's purchase, a product web page

2    about the "Samsung Galaxy S4 (Verizon)."  Tr. Ex. 110.  The web page included clickable links

3    called "Warranty: Find out what's covered" (which, when clicked, would take users to a two-page

4    document entitled "Standard Limited Warranty") and "Owner's Manual: Download the PDF"

5    (which, when clicked, would take users to a 212-page User Manual).  Both documents contained

6    the same arbitration provision quoted in paragraph 7 above.

7    13.    The Samsung product web page does not contain the words "arbitration" or

8    "dispute resolution" and therefore cannot be searched for those words.  There is no indication on

9    the product web page itself (Tr. Ex. 110) that the documents available at the "Warranty" or

10   "Owner's Manual" links contain provisions relating to arbitration and dispute resolution.

11   14.    Mr. Norcia testified that he did not visit Samsung's website prior to his purchase,

12   and that the contrary allegation in his complaint was a "mistake."  Tr. at 91:18-92:4, 65:12-66:3.

13   15.    Prior to his purchase of the phone in May 2013, Mr. Norcia did not know anything

14   about Samsung's arbitration agreement.  Tr. at 67:16-18.

15   16.    Mr. Norcia did not contact Samsung for any reason within 30 days of purchasing

16   the phone, and he did not opt out of the arbitration clause.  Tr. at 110:24-111:4.

17   17.    Mr. Norcia has never had any communications directly with a phone manufacturer

18   about warranties.  *Id.* at 87:21-25.

19   18.    Mr. Norcia testified that he understands the term "warranty" to mean that "a

20   product is covered if something happens to it," and that "it's a protection on a product you buy."

21   Tr. at 115:8-10, 117:20-23.  That was the entirety of what he understood and expected a warranty

22   to be.  *Id.* at 117:22-23.

### CONCLUSIONS OF LAW

## I.    THE CONTRACT INQUIRY UNDER THE FEDERAL ARBITRATION ACT

Under the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure,

neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition"

the district court for "an order directing that such arbitration proceed in the manner provided for in

such agreement."  9 U.S.C. § 4.  "[U]pon being satisfied that the making of the agreement for

United States District Court
Northern District of California

United States District Court
Northern District of California

1    arbitration or the failure to comply therewith is not in issue, the court shall make an order directing

2    the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*  If the

3    making of the arbitration agreement is in issue, then "the court shall proceed summarily to the trial

4    thereof." *Id.*

5           The Supreme Court has made crystal clear in recent years that it is "beyond dispute that the

6    FAA was designed to promote arbitration" and "embod[ies] [a] national policy favoring

7    arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-49 (2011) (internal

8    quotation marks omitted).  But it has made equally clear -- as does the FAA itself -- that the

9    existence of an agreement to arbitrate is the essential condition that must be satisfied before the

10   rest of the FAA comes into play.  *See id.* at 1748 ("The 'principal purpose' of the FAA is to

11   'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *see also*

12   *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a

13   matter of contract and a party cannot be required to submit to arbitration any dispute which he has

14   not agreed so to submit.") (internal quotation marks omitted).

15          Our Circuit has also instructed that "whether a valid agreement to arbitrate exists" is the

16   first question the Court should ask when deciding a motion to compel arbitration brought under

17   the FAA.  *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013).  In making this

18   threshold inquiry, there is no thumb on the scale in favor of finding an arbitration agreement to

19   exist.  The "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the

20   question is "whether a particular party is bound by the arbitration agreement." *Comer v. Micor,*

21   *Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (further citing *Fleetwood Enters., Inc. v. Gaskamp*,

22   280 F.3d 1069, 1073 (5th Cir. 2002) for the principle that "[the] federal policy favoring arbitration

23   does not apply to the determination of whether there is a valid agreement to arbitrate between the

24   parties; instead '[o]rdinary contract principles determine who is bound.'").  *See also Chiron Corp.*

25   *v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("We begin our analysis by

26   recognizing that an agreement to arbitrate is a matter of contract: 'it is a way to resolve those

27   disputes -- but only those disputes -- that the parties have agreed to submit to arbitration.'" )

28   (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

1    The parties here agree that Samsung, as the party seeking to compel arbitration, bears the

2    burden of establishing the existence of a valid agreement to arbitrate. *See* Dkt. No. 18 at 7; Tr. at

3    3:16-18.

4    **II.    GOVERNING PRINCIPLES OF CALIFORNIA CONTRACT LAW**

5    As our Circuit recently confirmed, "[i]n determining whether a valid arbitration agreement

6    exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'"

7    *Nguyen v. Barnes & Noble Inc.*, No. 12-56628, 2014 WL 4056549, at *3 (9th Cir. Aug. 18, 2014).

8    "Federal courts sitting in diversity look to the law of the forum state -- here, California -- when

9    making choice of law determinations." *Id*.

10   The Court sits in diversity in this case. *See* Dkt. No. 1 ¶ 11 (invoking 28 U.S.C.

11   § 1332(d)(2) as basis of jurisdiction). And although the arbitration provision at issue itself

12   contains a Texas choice-of-law provision, both sides have addressed contract formation as an issue

13   of California law. Moreover, Samsung states that "the result would be the same under other

14   states' laws, including Texas law," Dkt. No. 18 at 11 n.6, which plaintiff does not dispute.

15   Consequently, the Court applies California law to the question of whether a valid agreement to

16   arbitrate was formed between Samsung and Mr. Norcia.

17   Under California law, "[t]here is no contract until there is mutual consent of the parties.

18   The manifestation of mutual consent is generally achieved through the process of offer and

19   acceptance." *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (internal

20   citations omitted). The mutual consent necessary to form a contract "is determined under an

21   objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the

22   reasonable meaning of their words and acts, and not their unexpressed intentions or

23   understandings. Although mutual consent is a question of fact, whether a certain or undisputed

24   state of facts establishes a contract is a question of law for the court." *Id*. (internal quotation

25   marks and citations omitted).

26   Because "the outward manifestation or expression of assent is the controlling factor," an

27   offeree, "knowing that an offer has been made to him but not knowing all of its terms, may be held

28   to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992-93 (1972) (internal citations omitted).  But

2  contracts cannot be formed on the basis of stealth drafting:  "when the offeree does not know that

3  a proposal has been made to him this objective standard does not apply.  Hence, an offeree,

4  regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual

5  provisions of which he was unaware, contained in a document whose contractual nature is not

6  obvious."  *Id.*; *see also Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002)

7  (applying California law and quoting *Windsor Mills*).

8        "Arbitration agreements are no exception to the requirement of manifestation of assent,"

9  and "[c]larity and conspicuousness of arbitration terms are important in securing informed assent."

10  *Specht*, 306 F.3d at 30.  "If a party wishes to bind in writing another to an agreement to arbitrate

11  future disputes, such purpose should be accomplished in a way that each party to the arrangement

12  will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties

13  thereto."  *Id.* (quoting *Commercial Factors Corp v. Kurtzman Bros.*, 131 Cal. App. 2d 133, 134-35

14  (1955)). [3]

15  **III.    MR. NORCIA DID NOT RECEIVE ACTUAL NOTICE**

16        As an initial matter, here, as in *Specht*, plaintiff "testified, and defendants did not refute,

17  that plaintiff [was] in fact unaware" of the arbitration provision in Samsung's warranty.  306 F.3d

18  at 32.  Mr. Norcia represented that he did not see -- let alone read -- the warranty booklet

19  containing the arbitration provision at the time he purchased his phone.  Samsung has not adduced

20

21

22  _____

[3] The Court is mindful of the Supreme Court's instruction in *Concepcion* that "courts must place

23  arbitration agreements on an equal footing with other contracts, and enforce them according to
   their terms," and that even doctrines that are thought to be generally applicable can be invalid if

24  they are "applied in a fashion that disfavors arbitration."  131 S. Ct. at 1745, 1747.  Neither
   *Windsor Mills* nor *Specht* turn on any heightened anti-arbitration motivations; nor has *Windsor*

25  *Mills* been applied in a way that disfavors arbitration.  The continued validity of the *Windsor Mills*
   rule that the Court applies in this order has been affirmed by state and federal courts alike post-

26  *Concepcion*.  *See*, *e.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 (2d Cir. 2012), *Knutson v.*
   *Sirius XM Radio Inc.*, Civil No. 12cv418 AJB (NLS), 2012 WL 1965337, at *3 (S.D. Cal. May 31,

27  2012), and *Rodriguez v. Citigroup Global Markets, Inc.*, No. B230310, 2012 WL 2354637, at *6
   (Cal. Ct. App. July 18, 2012) (unpublished case distinguishing *Windsor Mills* because respondents

28  had signed the operative document and document contained express acknowledgements, including
   of receipt of operative document and its inclusion of an arbitration provision).

any evidence challenging this statement.  Consequently, the Court finds Mr. Norcia did not have

actual notice of the arbitration terms.

## IV.     MR. NORCIA DID NOT RECEIVE INQUIRY NOTICE

### A.     BECAUSE HE DECLINED TO TAKE THE BOX WITH HIM, MR. NORCIA MUST BE TREATED AS THOUGH HE RECEIVED THE BOX

In its motion to compel arbitration, Samsung argued that because "the phone was packaged

in a box that contained a booklet of important terms, including a Standard Limited Warranty

[which] contained an arbitration provision," and because he thereafter failed to opt out within the

30 days provided, Mr. Norcia "manifested his assent to be bound by the arbitration provision."

Dkt. No. 18 at 2-3.  In response, Mr. Norcia argued that he could not be held to have assented,

because he "did not receive the arbitration terms Samsung now seeks to enforce."  Dkt. No. 20 at

1.  This was because, he said, the Verizon salesperson "unboxed the phone," "handed the phone

to" Mr. Norcia, and "did not give [to Mr. Norcia] the box."  Dkt. No. 20-1 at 2.  Although

Samsung argued in reply that this was because Mr. Norcia had voluntarily left the box behind at

the store, *see* Dkt. No. 21 at 1, it was impossible to tell from the papers.

The Court consequently held a bench trial, at which it was undisputed as a factual matter

that Mr. Norcia did indeed voluntarily decline the box, even though it had been offered to him.

*See* Findings of Fact ¶ 5.

The Court finds that Mr. Norcia should be treated as if he received the box.  It is well

established that "[c]ompetent adults are bound by . . . documents, read or unread."  *Bischoff v.*

*DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002) (quoting *Hill v. Gateway 2000*, 105

F.3d 1147, 1149 (7th Cir. 1997)); *see also Nguyen*, 2014 WL 4056549, at *6 (the "failure to read a

contract before agreeing to its terms does not relieve a party of its obligations under the contract").

A logical extension of that doctrine is that a person who voluntarily declines to take with him a

box containing important materials relating to the product he purchased must be treated as though

he had received the box (and the materials in it).  Declining to read a contract in hand is

analytically indistinguishable from declining to take a copy of the contract in the first place, and

United States District Court
Northern District of California

the legal effect of holding the person accountable should be the same.  Here, voluntarily refusing to accept the box and its contents does not in itself prevent formation of an agreement to arbitrate.

**B.     THE WARRANTY BOOKLET IS INSUFFICIENT TO GIVE RISE TO INQUIRY NOTICE UNDER *WINDSOR MILLS***

But that finding does not establish that a valid and enforceable arbitration contract was formed.  The Court fully accepts and agrees with the general proposition that "receipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms." *Specht*, 306 F.3d at 31 (citing cases).  "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."  *Id*. (quoting Cal. Civ. Code § 19).  Because Mr. Norcia should be treated as though he received the paper warranty booklet in the box that his phone was packaged in, this would normally be the end of the inquiry.

However, the particular facts here lead the Court to conclude that this is a case in which *Windsor Mills* requires a different outcome.  Even though plaintiff's physical receipt (or presumed receipt) of the warranty booklet would ordinarily have placed him on inquiry notice of an offer -- and his subsequent conduct could be deemed an acceptance -- Mr. Norcia "is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  25 Cal. App. 3d at 993.

These are the facts in evidence after trial:  What was included in the box Mr. Norcia declined was a 101-page booklet entitled "Product Safety & Warranty Information."  At the very front of the booklet, mostly in all capital letters, is a 5-page section on "Disclaimer of Warranties; Exclusion of Liability."  Arbitration or dispute resolution are not mentioned there.  Next comes the table of contents; arbitration and dispute resolution are not mentioned there, either.  Warranty information starts on page 70, in a question-and-answer format.  The first question is:  "What is covered and for how long?"  After four more questions -- "What is not covered?"; "What are SAMSUNG's obligations?"; "What must you do to obtain warranty service?"; "What are the

10

limits on SAMSUNG's liability?" -- at last, on page 76 is the question "What is the procedure for resolving disputes?"

The answer to that question -- which Samsung presents as the "arbitration agreement" -- begins with these words: "ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY." The answer about the procedure for resolving disputes ends with a notice to consumers about how they may "opt out of this dispute resolution procedure." Notice must be provided to Samsung, by e-mail or phone, "no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product." (Interestingly, and by way of contrast, the section that immediately follows the warranty section in the 101-page booklet is the "End User License Agreement for Software." That agreement starts by saying, "IMPORTANT. READ CAREFULLY: This End User License Agreement ('EULA') is a legal agreement between you . . . and Samsung Electronics Co., Ltd. . . . ." And a little further down, "BY USING THE DEVICE OR ITS PRELOADED SOFTWARE, YOU ACCEPT THE TERMS OF THIS EULA. IF YOU DO NOT ACCEPT THESE TERMS, **DO NOT USE** THE DEVICE OR THE SOFTWARE. INSTEAD, RETURN THE DEVICE TO THE RETAILER FOR A REFUND OR CREDIT.")

As these facts show, the arbitration provision is not presented as an *offer* which the consumer is invited to accept or reject. Instead, the warranty, including the "procedure for resolving disputes," is presumed to apply automatically "upon the date of purchase." Tr. Ex. 102 at 70; *see also* Tr. at 57:12-17 (Samsung witness testifying that Mr. Norcia accepted the arbitration provision "[w]hen he purchased the phone, the warranty comes with the phone. They're not separable. So he accepted the warranty and the terms and conditions of the warranty when he puts a credit card down to buy the phone.").

The Court does not quarrel with the proposition that the warranty is "contractual" in the sense that it creates binding, legal obligations on Samsung. It also limits Samsung's obligations in important ways. But under California law, "[a]ny affirmation of fact or promise made by the

11

1    seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates

2    an express warranty that the goods shall conform to the affirmation or promise." Cal. Commercial

3    Code § 2313(1)(a). The consumer need not agree to or accept a warranty in order for it to be

4    created, nor does the consumer need to have relied on it. *See* Bohn and Williams, California Code

5    Comment to Commercial Code § 2313 (West 2002) ¶ 2 ("Under Subdivision (1) of this section

6    'no particular reliance on [affirmations of fact] need be shown in order to weave them into the

7    fabric of agreement.' Official Comment 3."). All that the consumer needs to do obtain the benefit

8    of the warranty is to buy the product that the seller has made affirmative representations about.

9            An agreement to arbitrate, however, is different in nature, and cannot be created as

10   Samsung has tried to do here -- by stuffing an inconspicuous "Q&A" about the "procedure for

11   resolving disputes" into a statement about the scope of the warranty. *Windsor Mills* bars contract

12   formation through such stealth tactics, and California cases distinguishing that holding have taken

13   pains to point out that the documents they addressed were, unlike here, called a "contract" or

14   required the counter-party's signature. *See Marin Storage & Trucking, Inc. v. Benco Contracting*

15   *and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049-50 (2001) ("Here, the document in question is

16   entitled Work Authorization and Contract. The clause immediately above the customer's

17   signature states, 'This is a contract which includes all terms and conditions stated on the reverse

18   side.' . . . There is simply no basis for a conclusion that the document was unrecognizable as a

19   binding contract."); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123-24 (2006)

20   ("*Windsor Mills* involved printed forms entitled 'Acknowledgement of Order' that were sent to the

21   buyer as each order of merchandise was received and did not require the buyer's signature. . . .

22   Here, the agreement is titled 'WORK PROPOSAL AND AUTHORIZATION,' and is signed by

23   ATI's representative and by Kathy Rodriguez underneath a line stating 'Accepted by Client.'").

24           Without any words alerting consumers that Samsung's arbitration term was a "contract" or

25   "agreement," and without anywhere requiring consumers like Mr. Norcia to sign in order to accept

26   the arbitration provision or at least to acknowledge having received it, the conclusion must be that

27   no reasonable person would "know that a proposal has been made to him." *Windsor Mills*, 25 Cal.

28   App. 3d at 993. Indeed, the way that Samsung has structured its arbitration provision within its

United States District Court
Northern District of California

warranty, no proposal was in fact made to the purchaser.  Instead, the arbitration provision was disguised as merely a "term" of the warranty, which automatically attaches from the moment of purchase without any additional acceptance or reliance on the part of the purchaser.

Samsung has identified no controlling authority that compels a different result.  Although *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151 (9th Cir. 2013), is of course binding authority on this Court, there, the issue was not contract formation, but rather the preemptive effect of the FAA on a public policy defense available under Montana state law.  In any event, the facts of that case are different than the ones here because there, the document that contained the arbitration clause was entitled the "Bresnan OnLine Internet Service Subscriber Agreement and Acceptable Use Policy."  *See id*. at 1154-55.  Moreover, the beginning of the service agreement "direct[ed] customers to, 'Please read this Agreement very carefully, because by accepting the Service, you agree to all of these terms.'"  *Id*.  Two district court opinions that upheld arbitration agreements in the absence of a signature can similarly be distinguished.  *See Murphy v. DirecTV, Inc.*, No. 2:07-cv-06465-JHN-VBKx, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011) (document containing the arbitration provision was labeled as "the DirecTV Customer Agreement"); *Knutson v. Sirius XM Radio Inc.*, Civil No. 12cv418 AJB (NLS), 2012 WL 1965337, at *3 (S.D. Cal. May 31, 2012) (upholding, and finding *Windsor Mills* exception inapplicable to, arbitration provision contained in "the Agreement, entitled 'Customer Agreement & Website Terms of Use'").

The Court's lack of formation finding here is not driven by any single fact -- *e.g.*, that this is a "terms-later" situation, where the terms came inside of the box rather than specifically being disclosed to the consumer at or prior to purchase; or that the method of acceptance was through the practice of "accept-or-return" (or in this case, "return-or-opt-out"), rather than specifically requiring the consumer's signature.  Nor is it driven by the fact that the arbitration provision was contained in a manufacturer's warranty.  There may be other situations where arbitration provisions within manufacturer's warranties may nevertheless give rise to a true agreement to arbitrate.

1    That, however, simply is not the case here.  "[T]he 'whole purpose' of warranty law is 'to

2    determine what it is that the seller has in essence agreed to sell . . . .'  Therefore, in keeping with

3    this purpose, section 2313 focuses on *the seller's* behavior and obligation -- his or her

4    affirmations, promises, and descriptions of the goods -- all of which help define what the seller 'in

5    essence' agreed to sell."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1228 (2010)

6    (emphasis in original and citations omitted; further observing that any descriptions or affirmations

7    about the product contained in the directions that were sealed in the product package "have

8    already been made by Dentsply at the time the product is delivered to the customer").  Similarly,

9    the affirmations Samsung made about its phone that were contained in the warranty booklet (*e.g.*,

10   that the phone would be "free from defects in material and workmanship under normal use and

11   service for" one year from the date of purchase) were made at the time the phone was delivered to

12   Mr. Norcia and gave rise to binding obligations under warranty law.

13   Not so with the arbitration provision that was inconspicuously hidden as an innocuous-

14   seeming answer to the question "[w]hat is the procedure for resolving disputes?"  The FAA

15   requires a "written agreement for arbitration."  9 U.S.C. § 4.  An agreement requires mutual

16   assent, generally achieved through an offer and acceptance.  An offer that no reasonable person

17   would recognize as a proposal, *see Windsor Mills*, 25 Cal. App. 3d at 993, does not count.

18   Consequently, because Mr. Norcia "had insufficient notice" of Samsung's arbitration provision

19   contained in its warranty, the Court concludes that he "did not enter into an agreement with"

20   Samsung to arbitrate his claims.  *See Nguyen*, 2014 WL 4056549, at *7.[4]

21   For the sake of completeness, the Court briefly addresses two other arguments vigorously

22   raised by Samsung that are mainly off point.  Samsung argued that Mr. Norcia must be deemed to

23   have received notice through Samsung's website because Mr. Norcia made a binding admission in

24   his complaint that he looked at Samsung's website and specifically at Samsung's product web

25   page relating to the S4.  The web page contained links to both the warranty as a free-standing

26

27   ─────────────────────
     [4] To the extent that the Central District of California court has come to a contrary conclusion in

28   *Sheffer v. Samsung Telecommunications America, LLC*, Case No. 2:13-cv-03466-GW (AJWx), the
     Court disagrees with it.

United States District Court
Northern District of California

14

1    document as well as a 212-page User Manual that reproduced within it the limited warranty

2    (including the arbitration provision).  Samsung asks for too much.  Mr. Norcia testified at the

3    bench trial that the complaint's reference to the web page was a "mistake."  Tr. at 91:18-92:4,

4    65:12-66:3.  "Factual assertions in pleadings and pretrial orders, *unless amended*, are considered

5    judicial admissions conclusively binding on the party who made them."  *Am. Title Ins. Co. v.*

6    *Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (emphasis added).  The Court concludes that

7    Mr. Norcia needs to amend his complaint, and that he must make sure that the next iteration of his

8    complaint is error-free.  The Court also concludes that Samsung's product web page is not

9    sufficient by itself to constitute inquiry notice -- among other things, it is an additional step

10   removed from the actual limited warranty language, which the Court has already found

11   insufficient.

12          Samsung also made a point of bringing out at trial the fact that Mr. Norcia works as a

13   director at a gaming company called BigPoint, and that in that capacity, he is familiar with the

14   concept of terms of service which contain dispute resolution procedures that are accepted by

15   conduct -- in BigPoint's case, by playing BigPoint's games.  This point, too, is overstated.

16   Samsung's arbitration provision is contained in a warranty, not "terms of service."  Moreover, just

17   as the Ninth Circuit observed in *Nguyen* where a similar argument was made, "[w]hether Nguyen

18   has experience with the browsewrap agreements found on other websites such as Facebook,

19   LinkedIn, MySpace, or Twitter, has no bearing on whether he had constructive notice of Barnes &

20   Noble's Terms of Use.  There is nothing in the record to suggest that those browsewrap terms are

21   enforceable by or against Nguyen, much less why they should give rise to constructive notice of

22   Barnes & Noble's browsewrap terms."  2014 WL 4056549, at *6.  Similarly, here, Mr. Norcia's

23   familiarity with BigPoint's Terms of Service are of no moment.  There is nothing in the record

24   regarding the enforceability of BigPoint's Terms of Service, nor why they should give rise to

25   constructive notice of *Samsung's* arbitration provision contained in its warranty.

26

27

28

United States District Court
Northern District of California

15

1

**CONCLUSION**

2    For all of these reasons, the Court finds that no agreement to arbitrate was made, and in the

3 absence of an agreement to arbitrate, the Court denies Samsung's pending motion to compel

4 arbitration.  Dkt. No. 18.

5    Looking forward, the Court notes as mentioned above that Mr. Norcia identified at least

6 one inaccuracy in his complaint.  Plaintiff is directed to file an amended complaint -- the final

7 draft of which must be reviewed by Mr. Norcia himself and which must be free of further factual

8 inaccuracies -- within 10 days of this order.

9    Defendants are directed to answer or otherwise respond to that amended complaint within

10 21 days of its filing.

11    A case management conference is set for November 5, 2014 at 1:30 p.m.

12    **IT IS SO ORDERED.**

13 Dated:  September 18, 2014

14                 _____

15             JAMES DONATO
              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California