PAUL HASTINGS LLP
John P. Phillips (SB# 154412)
johnphillips@paulhastings.com
Sean D. Unger (SB# 231694)
seanunger@paulhastings.com
Ryan C. Nier (SB# 243876)
ryannier@paulhastings.com
55 Second Street
Twenty-Fourth Floor
San Francisco, CA  94105-3441
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
Samsung Telecommunications America, LLC and
Samsung Electronics America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL NORCIA, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | CASE NO. 3:14-CV-00582-JD<br><br>**DEFENDANTS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING APPEAL**<br><br>Hearing Date:   January 14, 2015<br>Time:                 10:00 a.m.<br>Judge:               Hon. James Donato<br>Courtroom:        11<br><br>Complaint Filed:  February 7, 2014 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. Defendants Will Present a Substantial Case on the Merits. ................................... 2

        1. *Knutson* Addressed a Promotional Radio Service. ..................................... 2

        2. Mr. Norcia Purposefully Purchased a Samsung Phone; *Knutson* Did Not Purposefully Purchase a Sirius Subscription........................................ 3

        3. Samsung's Appeal Will Address Other Authority That *Knutson* Did Not Address.................................................................................................. 7

    B. Defendants Will Suffer Irreparable Harm in the Absence of a Stay...................... 8

    C. Plaintiff Will Not Be Harmed If This Court Grants a Stay..................................... 8

    D. A Stay Pending Appeal Furthers the Public Interest.............................................. 9

III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Al-Thani v. Wells Fargo & Co.*,
  No. C 08-1745 CW, 2009 WL 55442 (N.D. Cal. Jan. 7, 2009)..................................................5

*Bischoff v. DirecTV, Inc.*,
  180 F.Supp.2d 1097 (C.D. Cal. 2002) .......................................................................................6

*C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  716 F. Supp. 307 (W.D. Tenn. 1989)........................................................................................9

*Carbajal v. H&R Block Tax Servs., Inc.*,
  372 F.3d 903 (7th Cir. 2004).....................................................................................................7

*Carwile v. Samsung Telecomms. Am., LLC*,
  Case No. CV 12-5660-CJC, 2013 U.S. Dist. LEXIS 185089 (C.D. Cal. July 9,
  2013) .........................................................................................................................................7

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996)..................................................................................................................6

*E. & J. Gallo Winery v. EnCana Corp.*,
  503 F.3d 1027 (9th Cir. 2007)...................................................................................................6

*Frost v. LG Electronics MobileComm U.S.A., Inc.*
  No. D062920, 2013 WL 5409906 (Cal. Ct. App. Sept. 27, 2013).............................................7

*Han v. Samsung Telecomms. Am, LLC*,
  No. CV-13-3823, 2014 WL 505999 (C.D. Cal. Jan. 30, 2014) .......................................1, 7, 10

*Karimy v. Assoc. Gen. Contractors of Am. – San Diego Chapter, Inc.*,
  Civil No. 08-CV-297-L (CAB), 2009 WL 3698397 (S.D. Cal. Nov. 5, 2009).........................9

*Knutson v. Sirius XM Radio, Inc.*,
  No. 12-56120, 2012 WL 5507159 (9th Cir. Nov. 6, 2012) .......................................................6

*Knutson v. Sirius XM Radio, Inc.*,
  771 F.3d 559 (9th Cir. 2014)............................................................................................ passim

*Marts v. Xerox, Inc.*,
  77 F.3d 1109 (8th Cir. 1996).....................................................................................................7

*McNamara v. Samsung Telecomms. Am., LLC*,
  No. 14 C 1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014) ..........................................1, 7, 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013)...................................................................................................7

*Murphy v. DirecTV, Inc.*,
  No. 2:07-CV-06465-FMC-VBKx, 2008 WL 8608808 (C.D. Cal. July 1, 2008) .............8, 9, 10

*Pokorny v. Quixtar Inc.*,
  No. 07-00201, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ................................................1, 8

*Rajagopalan v. Noteword, LLC*,
  No. C11-5574, 2012 U.S. Dist. LEXIS 80714 (W.D. Wash. June 11, 2012) ...........................8

*Richards v. Ernst & Young LLP*,
  No. C-08-04988 RMW, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012) .........................................2

*In re Rockefeller Ctr. Props.*,
  272 B.R. 524 (Bankr. S.D.N.Y. 2000) ......................................................................................9

*Rodriguez v. Am. Techs., Inc.*,
  136 Cal. App. 4th 1110 (2006) ..................................................................................................5

*Rodriguez v. Citigroup Global Mkts., Inc.*,
  Case No. B230310, 2012 WL 2354637 (Cal. Ct. App. July 18, 2012).......................................5

*Sheffer v. Samsung Telecomms. Am, LLC*,
  No. CV-13-3466, 2014 WL 792124 (C.D. Cal. Feb. 6, 2014).........................................1, 7, 10

*Windsor Mills Inc. v. Collins & Aikmen Corp.*,
  25 Cal. App. 3d 987 (1972)........................................................................................................6

*Winig v. Cingular Wireless LLC*,
  No. C-06-4297, MMC, 2006 U.S. Dist. Lexis 83116 (N.D. Cal. Nov. 6, 2006) .......................2

## OTHER AUTHORITIES

http://www.business.ftc.gov/documents/bus01-businesspersons-guide-federal-
  warranty-law .............................................................................................................................6

## I. INTRODUCTION

Two federal courts in this Circuit have analyzed identical Samsung arbitration provisions and come to opposite conclusions regarding its enforceability. This Court examined Plaintiff's purchase of a Samsung Galaxy S4 Phone, its accompanying warranty, and concluded that an agreement to arbitrate had not been formed. Dkt. No. 41 at 11:26-28, 12:24-13:3. Another District Court examined three plaintiffs' purchases of Samsung Galaxy S4 Phones, their accompanying warranties, and concluded that valid agreements to arbitrate had been formed. *Sheffer v. Samsung Telecomms. Am, LLC*, No. CV-13-3466, 2014 WL 792124 (C.D. Cal. Feb. 6, 2014); *Han v. Samsung Telecomms. Am, LLC*, No. CV-13-3823, 2014 WL 505999 (C.D. Cal. Jan. 30, 2014). Most recently, a District Court in Illinois, with knowledge of this Court's decision and *Sheffer* and *Han*, similarly concluded that valid agreements to arbitrate had been formed based on the purchase of the same Galaxy S4 Phone. *See McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955, at *2 (N.D. Ill. Nov. 3, 2014). In light of these diverging outcomes, and Defendants' pending appeal, Defendants moved to stay further proceedings in this Court based, in part, on cases holding that a stay is appropriate when courts have reached opposite views on the same or similar questions. *See, e.g.*, *Pokorny v. Quixtar Inc.*, No. 07-00201, 2008 WL 1787111, at *1 (N.D. Cal. Apr. 17, 2008).

Rather than address this authority in his Opposition to Defendants' motion to stay, Plaintiff argues that the Ninth Circuit's decision in *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559 (9th Cir. 2014), so dramatically changes the law that Defendants' motion should be denied. Plaintiff is incorrect. The facts here are different than in *Knutson*, and the outcome is likely different as well. *Knutson* addressed a customer who bought a Toyota Tacoma truck and got a promotional radio service from Sirius that he did not intend to buy. In sharp contrast, this case is about a customer who purposefully purchased a Samsung Galaxy S4 phone, sued two Samsung Defendants, and pursued claims based solely on his purchase of his Samsung phone. Because of these key facts and others, *Knutson* does not support denial of Defendant's motion; in fact, it supports Defendants' position. For the reasons discussed in their initial motion and below, Defendants respectfully ask this Court to grant a stay pending appeal.

## II. ARGUMENT

The parties agree on the four factors this Court should apply when deciding whether to grant Defendants a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest favors a stay.

*Winig v. Cingular Wireless LLC*, No. C-06-4297, MMC, 2006 U.S. Dist. Lexis 83116, at *2 n.1 (N.D. Cal. Nov. 6, 2006) (citation omitted). Application of these factors warrants a stay.

### A. Defendants Will Present a Substantial Case on the Merits.

In their moving papers, Defendants cited law holding that Defendants "need not show it is 'more likely than not' [they will] succeed on appeal[,]" in order to meet the "likely to succeed" factor. *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *2 (N.D. Cal. Jan. 11, 2012) (citation omitted). "[R]ather," Defendants need only show "a 'reasonable probability' or 'a substantial case on the merits.'" *Id.* Defendants further demonstrated that there is a "substantial case" on appeal where various courts have looked at the same question but reached opposing conclusions. *See* Dkt. 44 at 3:7-4:2 (citing cases including *Karimy v. Assoc. Gen. Contractors of Am. – San Diego Chapter, Inc.*, Civil No. 08-CV-297-L (CAB), 2009 WL 3698397, at *1 (S.D. Cal. Nov. 5, 2009) (divergence in state and federal courts in the arbitration context "presents a serious legal question and opens up the possibility of stay pending appeal")).

In opposition, Plaintiff does not contest this law. Instead, he claims that the Ninth Circuit's decision in *Knutson* so changes the analysis that Defendants will have little chance of success on appeal. Dkt. 53-1 at 2:9-12. Plaintiff is mistaken. *Knutson* and this case are markedly different, and if anything, *Knutson* supports Defendants' request for a stay.

#### 1. *Knutson* Addressed a Promotional Radio Service.

*Knutson's* facts are not this case's facts. According to the Ninth Circuit, "[i]n November 2011," plaintiff "Knutson purchased a vehicle from Toyota that included a 90-day trial subscription to Sirius XM satellite radio. About *a month after* his trial subscription was activated, Knutson received a 'Welcome Kit' from Sirius XM that contained a Customer Agreement."

*Knutson*, 771 F.3d at 561-62 (emphasis added). "Sirius XM ha[d] arrangements with many major automakers, including Toyota, to install satellite radio receivers in new vehicles. Under these arrangements, automakers, including Toyota, include a trial subscription to Sirius XM for some fixed period of time with the purchase or lease of a vehicle." *Id.* at 562. "Knutson did not read the Customer Agreement when it arrived in the mail because he did not think 'that any of the documents contained therein were a contract governing the terms of Sirius' service.'" *Id.* at 563. "Instead, he believed that Sirius XM's trial subscription was a complimentary service 'provided for marketing purposes.'" *Id.* at 566. After all, he bought a truck, not a radio service.

Based on these facts, the Ninth Circuit concluded that a "reasonable person in Knutson's position could not be expected to understand that purchasing a vehicle from Toyota would simultaneously bind him or her to any contract with Sirius XM, let alone one that contained an arbitration provision without any notice of such terms." *Id.* Thus, according to the Ninth Circuit, "Knutson would only have had notice of his opportunity to cancel his subscription, or the effect of his continued use of the service, if he opened the Welcome Kit from Sirius and read all of the documents therein, which—in view of his lack of awareness of any contractual relationship with Sirius—he had no reason to do." *Id.*

### 2. Mr. Norcia Purposefully Purchased a Samsung Phone; *Knutson* Did Not Purposefully Purchase a Sirius Subscription.

In arguing that *Knutson* will influence this appeal's future result, Plaintiff argues that the facts in *Knutson* "square[]" with the facts of this case. Dkt. 53-1 at 3:19-20. Plaintiff is wrong. In ways the Ninth Circuit in *Knutson* found important, the facts here are very different:

*First*, the product the plaintiff wanted to buy was a truck, but the product at issue was a "trial subscription" to a radio service, *Knutson*, 771 F.3d at 562, that for marketing purposes came free with that truck. *Id.* at 566. The suit itself was about unsolicited calls. *Id.* at 563-64. Here, by contrast, Plaintiff purposefully purchased a Samsung phone, *see* Dkt. 41 at 2:18-21, and filed suit against two Samsung Defendants regarding that purchase. *Id.* at 1:14-17. This case is not about an accidental relationship of a car buyer with a radio provider like *Knutson*. It is a case about a phone buyer who purposefully selected the phone he purchased suing the phone

1  manufacturer about the phone.  In *Knutson*'s language, "[a] reasonable person in [Norcia's]
2  position could [] be expected to understand" that purchasing a phone was subject to the terms that
3  accompanied the phone.  *Knutson*, 771 F.3d at 566.

4      *Second*, the *Knutson* Court repeated multiple times the fact that Knutson did not receive
5  the Sirius XM Customer Agreement until *30 days after* he purchased his Toyota and not at the
6  time of purchase.  *Knutson*, 771 F.3d at 562 ("About a month after his trial subscription was
7  activated . . ."); 562 ("The Welcome Kit arrived in the mail on or about December 12, 2011 . . .");
8  566 ("When Knutson purchased his vehicle from Toyota, he did not receive any documents from
9  Sirius XM . . .").  Here, the opposite is true.  This Court has already found that:  (1) the Samsung
10 warranty containing the arbitration provision was included in Plaintiff's phone packaging; (2) the
11 warranty was referenced on the outside of that packaging, and (3) Plaintiff was offered all of that
12 material when he purchased his phone.  Dkt. 41 at 3:4-4:8.  Mr. Norcia declined to take that box
13 or its contents with him, but this Court correctly concluded that:  "[A] person who voluntarily
14 declines to take with him a box containing important materials relating to the product he
15 purchased must be treated as though he received the box (and the materials in it)."  *Id.* at 9:24-26.
16 Thus, unlike the Plaintiff in *Knutson*, Norcia had Samsung's warranty and the arbitration clause it
17 included at the time he bought his phone.

18     *Third*, and relatedly, the *Knutson* Court was troubled by the fact "[t]here is no information
19 in the record about what, if any, language regarding the Sirius XM trial subscription was in the
20 Toyota purchase contract."  *Knutson*, 771 F.3d at 568.  That concern does not exist here.  It is
21 undisputed that Mr. Norcia signed a Customer Agreement receipt.  8/14/14 Tr. Exs. 113, 117.  It
22 is also undisputed that: (1) the Customer Agreement referenced a "1 Yr. Mfg. Warranty," *see*
23 8/14/14 Tr. Exs. 113, 117; (2) Mr. Norcia received email copies of his Customer Agreement
24 receipt within minutes of his purchase, 8/14/14 Tr. Ex. 117; (3) he left the store where he bought
25 his phone with that Customer Agreement, Dkt. 20-1 at 2:23-24 ("The only document given to
26 me…was my receipt"); (4) he understood that Samsung manufactured his phone, Dkt. 34 (Aug.
27 14, 2014 Tr.) 93:5-7; and (5) had he reviewed the Agreement Mr. Norcia would have understood
28

1  that the Agreement referenced a manufacturer's warranty.  *Id.* at 109:4-10[1]; *see also Al-Thani v.*

2  *Wells Fargo & Co.*, No. C 08-1745 CW, 2009 WL 55442, at *6 (N.D. Cal. Jan. 7, 2009)

3  (compelling arbitration because "acknowledgment form clearly states that the signatory

4  acknowledges receipt of the Brokerage Account Agreement").[2]

5  Unlike in *Knutson*, in other words, this is not a case where the record is light or unclear.

6  The record is clear and the opposite of the *Knutson* facts.

7  Indeed, the Ninth Circuit offered guidance on what would have been sufficient to bind

8  Knutson to the Sirius Customer Agreement, and this guidance confirms *Knutson* should support a

9  reversal, not an affirmance.  For example, the *Knutson* Court suggested that the "Toyota purchase

10  agreement could clearly state that Toyota has a relationship with Sirius XM to provide Toyota

11  customers with a trial service, and that therefore the Toyota customer is entering into a

12  contractual relationship with Sirius XM."  *Knutson*, 771 F.3d at 568.  Here, Verizon did just that

13  by specifically listing the manufacturer's warranty on the Customer Agreement Mr. Norcia

14  signed, took with him when he left the store, and received via email immediately after buying his

15  Galaxy S4 phone.  8/14/14 Tr. Exs. 113, 117; Dkt. 20-1 at 2:23-24.

16  Likewise, the *Knutson* Court explained that "Toyota could also provide its customers with

17  literature that similarly explains the agreement between Sirius XM and the Toyota customer and

18  ask for assent to such agreement."  *Knutson*, 771 F.3d at 568.  Here, this is what Verizon did.

19  The Samsung warranty comes with the phone in the packaging.  Dkt. 41 at 3:11-4:8.  Verizon

20  offered that packaging to Norcia, but he declined because he was in a hurry to leave the store.  *Id.*

21  at 3:11-13.  But, regardless of declining the packaging and the warranty, Mr. Norcia signed a

---

[1] "Q. And, assuming you did, and you read it, you would have seen one-year manufacturer warranty.  Correct?  A. Correct.  Q. And if you had seen it at that time, was there anything that would have prevented you from going to Samsung's website to review that warranty?  A. No."

[2] The California cases this Court cited in its Order, *see* Dkt. 41, are in accord with *Al-Thani*, and should have led to the conclusion that there was a valid agreement to arbitrate.  *See, e.g.*, *Rodriguez v. Citigroup Global Mkts., Inc.*, Case No. B230310, 2012 WL 2354637, at *4 (Cal. Ct. App. July 18, 2012) (enforcing arbitration clause; "An agreement need not expressly provide for arbitration but may do so in a secondary document which is incorporated by reference.") (citation omitted); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1124 (2006) (enforcing arbitration clause; "It is nevertheless true, however, that 'ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms.") (citation omitted).

1  Customer Agreement acknowledging that he "agree[d] to . . . other terms and conditions for
2  services and selected features I have agreed to . . . on the receipt, and which have been presented
3  to me by the sales representative and which I had the opportunity to review."  8/14/14 Tr. Ex.
4  113.  *This case's facts, in other words, conform to a situation where the Knutson Court would*
5  *have found an enforceable agreement.*

6  Plaintiff implies that none of this matters because he reads *Knutson* as requiring a direct
7  purchase from the manufacturer.  *See* Dkt. 53-1 at 3:18-21, 5:5-14.  But, based on the guidance
8  the *Knutson* Court provided, that misreads the holding.  As just discussed, *Knutson* explained
9  how Toyota (the seller) could, by providing the Sirius Customer Agreement to the customer at the
10  point of sale, bind the customer to that agreement.  That is what happened here.  Plaintiff
11  purposefully purchased a Samsung phone from a Verizon store and received the Samsung
12  warranty at the point of sale, which this Court has already concluded was "contractual."  Dkt. 41
13  at 11:26-27.  The consequences of not reading that warranty rest with him.  *See*, *e.g.*, *Bischoff v.*
14  *DirecTV, Inc.*, 180 F.Supp.2d 1097, 1105 (C.D. Cal. 2002) ("[c]ompetent adults are bound by. . .
15  documents, read or unread.") (citation omitted).[3]

---

[3] Plaintiff also relies on the fact that *Knutson*, like this Court, relied on *Windsor Mills Inc. v. Collins & Aikmen Corp.*, 25 Cal. App. 3d 987, 991 (1972).  *See* Dkt. 53-1 at 5:3-4.  Plaintiff misses the point of Defendants' argument.  Defendants respectfully argued that because this Court found Mr. Norcia purchased a valid warranty that is contractual in nature, *see* Dkt. 41 at 11:26-28, *Windsor Mills* does not apply.  If the warranty was binding, its terms are binding too. Defendants also argued that to the degree the Court critiqued the Samsung warranty on the basis that it was in question and answer form, that critique was inconsistent with guidance from the Federal Trade Commission which offered examples of warranties that were similar in structure. http://www.business.ftc.gov/documents/bus01-businesspersons-guide-federal-warranty-law (last visited December 9, 2014).  Defendants also explained that *Windsor Mills* cannot be reconciled with the Federal Arbitration Act's preemption jurisprudence, which *Knutson* did not address, and which Sirius XM does not appear to have raised in its appellate briefing.  *See* Sirius XM's Opposition Brief, No. 12-56120, 2012 WL 5507159 (9th Cir. Nov. 6, 2012); *see also E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1046 n.14 (9th Cir. 2007) ("*County of Stanislaus* did not expressly address this issue, and '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having [been] so decided as to constitute precedents.'") (citation omitted); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687-88 (1996).

### 3. Samsung's Appeal Will Address Other Authority That *Knutson* Did Not Address

Further still, Plaintiff briefs the "substantial question" factor as if *Knutson* is the only case that will matter on appeal. It is not. *Knutson* neither dealt with, nor discussed, a warranty contract accompanying a consumer product. *Knutson* was thus in no position to disagree with, and did not disagree with, authority recognizing that "what holds true for warranties holds true for arbitration[.]" *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004).

Unlike *Knutson*, the California Court of Appeal has addressed the question of what happens when a warranty accompanies a phone and that warranty includes an arbitration provision. Specifically, in *Frost v. LG Electronics MobileComm U.S.A., Inc.* No. D062920, 2013 WL 5409906 (Cal. Ct. App. Sept. 27, 2013), the Court of Appeal explained that, "LG could have bargained to compel arbitration of claims asserted against it by including an arbitration provision in its written warranty[.]" *Id.* at *8 (applying California law). Without discussing *Frost*, this Court reached the opposite conclusion, which again—given a divergence of views—is sufficient to meet the "substantial question" requirement and supports a stay.[4]

Other cases further confirm that Samsung's appeal will raise a substantial question warranting a stay. As noted above, there is *Sheffer*, *Han*, and the fact a District Court in Illinois enforced the same arbitration provision after this Court's ruling. *See McNamara*, 2014 WL 5543955 at *2.[5] The Ninth Circuit's earlier decision in *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 n.4 (9th Cir. 2013), which like *Knutson* applied California law, held that "the district court's finding that Plaintiffs received the Consumer Agreement and continued to accept DirectTV's services is not clearly erroneous and its conclusions that these actions bound Plaintiffs to the terms of the contract is correct." And the additional authority Defendants cite in their moving papers and throughout their motion to compel further confirm that a substantial question exists.

Each of these points demonstrates why, even after *Knutson*, this appeal will raise

---

[4] Other courts have also recognized that "customers expect at least some warranty period on most products." *Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996).

[5] Similarly, in *Carwile v. Samsung Telecomms. Am., LLC*, Case No. CV 12-5660-CJC (JPRx), 2013 U.S. Dist. LEXIS 185089 (C.D. Cal. July 9, 2013), the Court enforced a similar Samsung arbitration clause.

significant legal questions on which reasonable minds *have* differed.  This Court has respectfully disagreed with the holdings of other Courts, and this alone should be deemed sufficient to support a stay.  *See, e.g.*, *Pokorny*, 2008 WL 1787111 at *1 ("serious legal questions" demonstrated where there are "conflicting rulings").

### B. Defendants Will Suffer Irreparable Harm in the Absence of a Stay.

Turning to the second stay factor, Plaintiff does not meaningfully dispute that Defendants will be irreparably harmed if this Court does not grant a stay pending appeal.  To the contrary, Plaintiff acknowledges that "the Courts of this Circuit generally find that this factor weighs in favor of staying proceedings pending interlocutory appeal of an order denying a motion to compel arbitration."  Dkt. 53-1 at 6:4-6.  Plaintiff's only response is to repeat his belief that based on *Knutson* he will win the appeal.  *Id.* at 6:7-10.  While Defendants disagree and believe that they have the better view of the law, there is no real dispute that this factor is satisfied and favors a stay.  As a case cited by Plaintiff explains, a defendant would be irreparably harmed by "[a]llowing litigation to continue while an appeal is pending on a motion to compel arbitration . . . where the plaintiff seeks to certify a class of plaintiffs[.]"  *Rajagopalan v. Noteword, LLC*, No. C11-5574, 2012 U.S. Dist. LEXIS 80714, at *8 (W.D. Wash. June 11, 2012) ("This factor favors [Defendants.]").

### C. Plaintiff Will Not Be Harmed If This Court Grants a Stay.

The third factor—whether others will be harmed by the stay—also supports Defendants.  In his opposition, Plaintiff does not dispute that should he ultimately prevail he will be able to recover.  He instead makes three *ipse dixit* arguments, which courts have already rejected.

First, he makes the generic claim that absent class members would be substantially injured should a stay issue.  Dkt. 53-1 at 6:14.  But there is no class here; should Defendants prevail on appeal there could be no class, and courts have already concluded that "the possible monetary harm to the class, while collectively substantial, is individually minor, and can be fully redressed should [plaintiff] . . . ultimately prevail."  *Murphy v. DirecTV, Inc.*, No. 2:07-CV-06465-FMC-VBKx, 2008 WL 8608808, at *3 (C.D. Cal. July 1, 2008).

1  Plaintiff next invokes the hypothetical risk that "witnesses' memories and evidence will
2  become stale," Dkt. 53-1 at 6:15, but again courts have rejected this argument as speculative:
3  "[A]ny risk of lost evidence is entirely speculative at this point." *Murphy*, 2008 WL 8608808 at
4  *3; *see also C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 716
5  F. Supp. 307, 310 (W.D. Tenn. 1989) ("Plaintiff, however, cites to no particular witnesses or
6  documents and speaks only in general terms.").

7  Finally, Plaintiff argues that he will be harmed because he does not know whether he has
8  the proper parties before the Court. Dkt. 53-1 at 6:18-22. But, Plaintiff cites to no law suggesting
9  a stay should be denied when Plaintiff does not know if he sued the right parties, nor does he
10 explain why this Court should create new law. To state the obvious, Plaintiff has sued certain
11 defendants and those defendants have a right to appeal. His burden was to make sure he sued the
12 right parties before he filed suit, not to sue and then figure it out. *Cf. In re Rockefeller Ctr.*
13 *Props.*, 272 B.R. 524, 553 (Bankr. S.D.N.Y. 2000) ("In order to have an allowable claim, NBC
14 must have a claim it could successfully establish under state law, as of the Filing Date. To file a
15 suit, NBC would have had to comply with the requirements of FRCP 9 which require the pleading
16 of fraud or mistake with particularity. . . . NBC would not have been able to file suit and then
17 seek to have discovery to uncover its case.").

18 In short, Plaintiff has presented this Court with no viable ground to reach a conclusion
19 other than that this factor, too, supports a stay.

20  **D.  A Stay Pending Appeal Furthers the Public Interest.**

21 Defendants cited numerous cases in their moving papers noting that the final factor,
22 whether a stay is in the public interest, also supports a stay. *See* Dkt. No. 44 at 8:18-9:18. Those
23 cases confirm that "a stay of all pretrial proceedings serves the public interest in promoting the
24 strong federal policy encouraging arbitration as a prompt, economical and adequate method of
25 disputes resolution for those who agree to it." *Karimy*, 2009 WL 3689397 at *3 (citation and
26 internal quotations omitted). Thus, courts have concluded "in accordance with other district court
27 decisions, that the strong public policy favoring arbitration warrants issuance of a stay pending
28 appeal." *Murphy*, 2008 WL 8608808 at *4 (citing cases like *Eberle v. Smith*, 2008 U.S. Dist.

LEXIS 6393, at *11 (S.D. Cal. Jan. 29, 2008) ("It is clear that disputes about whether or not parties must submit to arbitration take place against a backdrop of policies encouraging arbitration and the preservation and integrity of judicial resources.  Here, continuing to litigate in this Court during the pendency of the appeal would undermine both policies. . . .")).

In response, Plaintiff concedes "that this can be a factor weighing in favor of a stay."  Dkt. 53-1 at 7:8.  Nevertheless, citing two non-arbitration cases, he contends that the interest in an expedited litigation should outweigh that concern.  *Id.* at 7:9, n.36.  But as already noted, the relevant authority holds that when arbitration is at issue, the public interest analysis *favors* a stay.  Moreover, since Plaintiff has already missed key filing deadlines, *see* Dkt. Nos. 53 and 54, he should not be heard to invoke the mantra of expedited litigation.  Further still, this Court will hear this motion to stay *just six days* before Defendants' Opening brief on appeal is due.  With this appeal already well underway, there is no reason not to grant the requested stay.  This factor, like the others, supports Defendants' requested relief.

**III.   CONCLUSION**

Given that this Court's decision on Defendants' motion to compel arbitration conflicts with other Courts' decisions in *Sheffer*, *Han*, and *McNamara* on the same question, there can be no dispute that reasonable minds disagree.  They already have.  When that is true, courts have concluded that a stay makes legal and practical sense.  For the reasons stated in their moving papers and above, Defendants respectfully request that this Court follow that same course and grant their motion to stay pending appeal.  There is simply no reason for the parties to engage in expensive, complex litigation before the Ninth Circuit rules.

DATED:  December 10, 2014          PAUL HASTINGS LLP

By: _____/s/ John P. Phillips_____
          John P. Phillips

Attorneys for Defendants
Samsung Telecommunications America, LLC and
Samsung Electronics America, Inc.