UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL NORCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-00582-JD<br><br>**ORDER RE DEFENDANTS' MOTIONS TO STAY AND DISMISS**<br><br>Re: Dkt. Nos. 44, 57 |

This case is a consumer class action alleging misrepresentations and omissions by the defendants about the speed, performance and memory capacity of their Galaxy S4 smartphone. The Court grants in part and denies in part defendants' motion to dismiss plaintiff's second amended complaint, Dkt. No. 57, which the Court previously took under submission without oral argument. Dkt. No. 66. The Court also provides a fuller statement of reasons for the text order denying defendants' motion to stay. Dkt. No. 44.

## BACKGROUND

As detailed in the order denying defendants' motion to compel arbitration, Dkt. No. 41, plaintiff Daniel Norcia owns a Galaxy S4 cell phone manufactured by Samsung and uses it on Verizon's wireless network.[1] Plaintiff bought the phone at a Verizon store in May 2013 during the first week the phone was on the market. Dkt. No. 1 ¶ 31. A little over eight months later, he filed a class action complaint alleging that Samsung had engaged in misrepresentations and omissions relating to the Galaxy S4's speed, performance and memory capacity. The main factual allegation

---

[1] There are two named defendants: Samsung Telecommunications America, LLC and Samsung Electronics America, Inc. Unless otherwise noted, the Court refers to both together as "Samsung."

1  in the original complaint was that Samsung had "intentionally programmed the Galaxy S4 to fool
2  benchmark apps and to create false perceptions regarding the speed and performance of these
3  devices." *Id*. ¶ 2. The complaint also alleged that "Samsung has misled the buying public
4  regarding the storage capacity of the Galaxy S4." *Id*. ¶ 5. More specifically, Samsung is alleged
5  to have "advertised and marketed the Galaxy S4 as having 16 gigabytes (GB) of storage capacity"
6  when approximately half of that memory is used by pre-installed software and is "inaccessible and
7  unusable to the end user." *Id*.

8        In lieu of an answer, Samsung moved to compel arbitration of the dispute on the basis of
9  an arbitration provision contained in its own warranty for the phone. Dkt. No. 18. Norcia
10 disputed that he knew about or had agreed to arbitration with Samsung. Consequently, because
11 "the making of the arbitration agreement" was in issue, the Court held a bench trial pursuant to the
12 Federal Arbitration Act, 9 U.S.C. § 4, and thereafter denied defendants' arbitration motion for lack
13 of contract formation. Dkt. No. 41. Plaintiff here was uniquely situated from a factual point of
14 view in that he had declined to take with him from the Verizon store the box that his phone had
15 come in, because he "felt that he knew how to use this kind of phone (an 'Android' phone), and he
16 was in a hurry to get to work." *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-
17 00582-JD, 2014 WL 4652332, at *2 (N.D. Cal. Sept. 18, 2014). This, however, was not the main
18 basis for the Court's denial of arbitration. The Court's decision turned on California state contract
19 law, which provides that "contracts cannot be formed on the basis of stealth drafting." *Id*., at *4.
20 The Court's holding was not that the arbitration provision needed to have been specially called out
21 because of its nature; indeed, the Court expressly noted the United States Supreme Court's
22 instruction that "courts must place arbitration agreements on an equal footing with other contracts,
23 and enforce them according to their terms." *Id*., at *5 n.3. On the facts here, the Court found that
24 the arbitration provision -- which was buried deep inside a 101-page booklet entitled "Product
25 Safety & Warranty Information" -- failed the test set forth in *Windsor Mills, Inc. v. Collins &*
26 *Aikman Corp.*, 25 Cal. App. 3d 987, 992-93 (1972): "an offeree, regardless of apparent
27 manifestation of his consent, is not bound by inconspicuous contractual provisions of which he
28 was unaware, contained in a document whose contractual nature is not obvious." *Id*., at *4. No

binding contract, arbitration agreement or not, could have arisen from the kind of purported "offer" that was made in this case.

Defendants appealed the Court's order denying arbitration to the Ninth Circuit Court of Appeals, Dkt. No. 43, and then asked that this Court stay this litigation while that appeal was pending. Dkt. No. 44. In the meantime, plaintiff filed a second amended complaint, Dkt. No. 51, in response to defendants' motion to dismiss, having amended once before pursuant to the Court's order. Dkt. No. 42. Defendants moved to dismiss the second amended complaint. Dkt. No. 57. The Court denied the motion to stay by text order and took the motion to dismiss the second amended complaint under submission. Dkt. No. 66.

Plaintiff's second amended complaint is now the operative complaint. Dkt. No. 51. Although plaintiff has added more factual detail, the principal themes are unchanged from the original complaint and the current complaint rests on the same performance and memory allegations. Plaintiff continues to allege that Samsung manipulated the Galaxy S4's performance on "benchmarking" apps, *i.e.*, "performance-measuring tools used by reviewers and consumers to test and compare the speed and performance of smartphones and tablets," by "intentionally program[ing]" the Galaxy S4 to "run at higher-than-normal speeds when they detect" that those apps are being run on the phone. *Id*. ¶¶ 2-4. Specifically, Samsung allegedly "rigged" the phones to detect commonly used benchmark apps and artificially boost performance of the central and graphics processing units during the benchmarking cycle. *Id*. ¶¶ 19-22. This made the phone look like it offered record-breaking performance when it actually functioned at lower levels in normal use. *Id*. ¶¶ 26-29. Norcia alleges Samsung pursued these tactics to generate "PR 'buzz' to increase the demand for its new devices, and to support a high price-point for these devices." *Id*. ¶ 30.

Plaintiff also continues to allege that "Samsung has misled the buying public regarding the storage capacity of the Galaxy S4" by representing the phone "as having 16 gigabytes (GB) of storage capacity" when "the preinstalled software on the Galaxy S4 uses approximately half of the 16 GB memory." *Id*. ¶ 5. Norcia alleges that the S4's operating system alone eats up "nearly 7 GB of the 16 GB advertised capacity." *Id*. ¶ 34.

3

Norcia states that he relied on misrepresentations about the S4's performance and memory to buy the phone. *Id*. ¶ 37. He asserts California state law claims for false and deceptive practices under: (1) the California Consumer Legal Remedies Act, Cal. Civil Code § 1750 ("CLRA"); (2) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); (3) the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); and (4) fraud. *Id*. ¶¶ 54-80. He does not bring any warranty or breach of contract claims. Defendants seek dismissal of all four claims. Dkt. No. 57.

**DISCUSSION**

**I.     MOTION TO STAY**

The parties agree, as they must, that the question of whether to stay this case during the arbitration order appeal is a matter entrusted to the Court's discretion. *See* Dkt. No. 44 at 1-2, Dkt. No. 53-1 at 1. The parties also agree that the Court should consider four factors in making the decision: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See* Dkt. No. 53-1 at 1-2 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011)); Dkt. No. 44 at 2 (citing same factors and quoting *Winig v. Cingular Wireless LLC*, No. C-06-4297 MMC, 2006 U.S. Dist. LEXIS 83116, at *2 n.1 (N.D. Cal. Nov. 6, 2006)). Under Ninth Circuit law, these factors are considered on a continuum. *See Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008).

Defendants' primary argument for a stay is that they present a "serious legal question" in their appeal because different district courts have reached conflicting conclusions about the enforceability of defendants' arbitration provision. *See*, *e.g.*, Dkt. No. 44 at 3-4. But defendants have not identified any controlling case law that requires the Court to impose a stay in that situation, and the Court is not aware of any controlling case so holding. This is not surprising. District courts reach different results with some regularity, and the mere fact that defendants

4

believe they can point to some decisions purportedly at odds with this Court's arbitration order does not establish that they have made a strong showing of a likelihood of success.

Substantively, defendants' arguments have, if anything, weakened over time. A recent Ninth Circuit decision applied the same California contract law cited by this Court to reverse an order compelling arbitration. In *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), our Circuit reversed a district court and found that an arbitration agreement had not been formed, relying on the same language in *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972), that the Court relied on in its order reaching the same conclusion here. *See Knutson*, 771 F.3d at 566 ("'[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.' *Windsor Mills, Inc.*, 25 Cal. App. 3d at 993."). At a minimum, this holding cuts sharply against defendants' argument that *Windsor Mills* "is at odds with controlling authority," Dkt. No. 44 at 6 n.2, and the Court finds that *Knutson* -- the Ninth Circuit's most recent and on-point decision for this issue -- substantially dilutes defendants' argument that they present a "serious legal question" in their appeal.

Defendants have also failed to establish that they will be irreparably injured without a stay. In *Bradberry v. T-Mobile USA, Inc.*, No. C 06-6567 CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007), the Court stated that "a stay would be appropriate when the trial date approaches or if discovery were burdensome," but the former is not true in this case and defendants have given no indication that the latter is true, either. Even if it were, burdensome discovery is a harm that could be mitigated by phasing the proceedings or taking some other creative case management measures, suggestions for which the Court is always open to considering. *See In re Carrier IQ, Inc. Consumer Privacy Litigation*, No. C-12-md-2330 EMC, 2014 WL 2922726 (N.D. Cal. June 13, 2014).

Defendants' perfunctory arguments on the third and fourth factors are equally insufficient to compel the conclusion that the Court should impose a stay in this case. Dkt. No. 44 at 8-9. Defendants make generic arguments that plaintiff will not be harmed by a stay (despite the fact that a final decision on defendants' appeal is still many months away) and that a stay is in the

1 public interest because of the public policy in favor of arbitration. These are arguments that could be made in every case in which an arbitration motion has been denied, and to grant a stay on these bases would effectively write into the FAA an automatic stay pending appeal of a denial of an arbitration motion. Of course, the FAA contains no such provision.

It is for these reasons that the Court denied defendants' motion to stay. Dkt. No. 66.

## II. MOTION TO DISMISS

Well-established standards govern defendants' motion to dismiss plaintiff's second amended complaint. To comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* at 556).

In evaluating a motion to dismiss, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted).

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." At the same time, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Our Circuit has held that allegations about the circumstances constituting an alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong," and the "averments of fraud must be accompanied by 'the who, what, when,

6

where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (some internal quotation marks omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *United States ex rel Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

This heightened pleading standard can apply even to claims for which fraud is not an essential element. When a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," such a claim is "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-04. Here, all of plaintiff's claims are based on the core allegation that defendants "intentionally misled the public" about the Galaxy S4's benchmarking performance and storage capacity. Dkt. No. 51 ¶¶ 1-5. Plaintiff does not dispute that Rule 9(b) applies, Dkt. No. 62 at 4-5, and the Court finds that the pleading particularity requirement governs all of plaintiff's claims.

### A. BENCHMARKING ALLEGATIONS

#### a. The Affirmative Misrepresentation Claims

Plaintiff has failed to allege good claims for affirmative misrepresentations by Samsung in connection with his performance and benchmarking allegations. The core problem is that these allegations are premised upon software programming by Samsung rather than direct statements to consumers. The complaint makes clear that the misconduct Samsung is accused of is in the programming of the phones. *See*, *e.g.*, Dkt. No. 51 ¶ 2 ("Samsung has programmed these devices to run at higher-than-normal speeds when they detect certain 'benchmarking' apps"); ¶ 3 (Samsung "artificially boosted the performance of its devices when running benchmarking apps"); ¶ 20 ("[i]n versions of the S4 using the Qualcomm Snapdragon 600 processor, Samsung wrote code into the firmware (embedded software) of the S4 . . ."); ¶ 25 ("[i]n manipulating the benchmark performance of the Galaxy S4, Samsung effectively made false representations to persons who ran benchmarking apps on the Galaxy"); ¶ 26 ("[t]he false statements that Samsung made through benchmark manipulations were passed on to the consumers").

Samsung's alleged programming conduct does not constitute a "statement" or "representation" for which Samsung, even assuming falsity, could be held liable under any of the four consumer protection and fraud claims plaintiff has asserted. The second amended complaint alleges that Samsung "rigged" the benchmarking apps "knowing that the benchmarking manipulations would result in false information being communicated to consumers." *Id*. ¶ 22. But the complaint is striking in its failure to allege that Samsung itself made any false communications to end users. At most, it alleges that third-party product reviewers running the apps, such as Engadget or SlashGear, made the statements that allegedly misrepresented the S4's performance. *See*, *e.g.*, *id.* ¶ 26. This is not enough to pin an affirmative misrepresentation case on Samsung. *See*, *e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924-25 (N.D. Cal. 2013) (stating that "plaintiff cites no case holding that a 'representation' conveyed by a product's appearance *alone* can give rise to liability for fraud" and that "[u]nder plaintiff's argument, if a car's dashboard clock were fast or its temperature gauge miscalibrated, the manufacturer would have engaged in an actionable misrepresentation. The court does not understand the UCL, CLRA or WCPA to reach so far, and thus declines to find that the 'representations' alleged can give rise to liability under those statutes."). The Court declines to find that Samsung's alleged acts of programming the Galaxy S4 phone in a certain way constitute a direct affirmative misrepresentation or false statement under the UCL, CLRA or FAL or as a matter of common law fraud.

Plaintiff appears to have anticipated this result because he argues for a theory of "indirect deception" to save the representation claims. Dkt. No. 62 at 7. Even assuming for the sake of discussion that California recognizes the theory for the claims plaintiff has asserted here, plaintiff acknowledges that indirect deception involves a re-publication of a misrepresentation originally made by the defendant. *Id*. ("Under this doctrine, a person who *makes a misrepresentation to a party* who then repeats it to another is liable if . . . .") (emphasis added). Plaintiff fails to allege an affirmative misrepresentation by Samsung that anyone repeated, so this theory is of no help to him here. But the Court is not prepared to completely close the door to this argument at this time. It is not inconceivable that discovery might uncover an affirmative representation by a Samsung

8

employee to a third party reviewer, or something similar, that could support the application of the indirect deception theory in this case. Even accepting defendants' argument on this point, it is also not impossible that plaintiff might uncover facts to support an allegation that Samsung should be liable for the misrepresentations conveyed by the third-party reviewers because of Samsung's own "participation" that led to those misrepresentations and its "'unbridled control' over the practices that are found to violate section 17200 or 17500." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002). Consequently, the affirmative misrepresentation claims for plaintiff's benchmarking allegations are dismissed without prejudice pending discovery. If down the line plaintiff believes that the evidence creates a good-faith basis for seeking to allege an affirmative misrepresentation claim consistent with this decision, he may file a motion for leave to amend the complaint.

### b. The Omissions Claims

Plaintiff's performance claims based on omissions will go forward. *See*, *e.g.*, Dkt. No. 51 ¶ 60 (alleging plaintiff and class relied on Samsung's "misrepresentations and omissions"). For plaintiff's first claim under the CLRA, it is well established that "a claim may be stated under CLRA in terms constituting fraudulent omissions" if "the omission [is] contrary to a representation actually made by the defendant, or [is] an omission of a fact that the defendant was obliged to disclose." *Daugherty v. American Honda Motor Co. Inc.*, 144 Cal. App. 4th 824, 835 (2006). Pleading a fraudulent omission under this standard almost necessarily makes for a sufficiently pled claim under the UCL and common law fraud as well, because of the overlap in elements. *See*, *e.g.*, *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 OSG (JCx), 2012 WL 313703 (C.D. Cal. Jan. 23, 2012). Because Samsung is not alleged to have made any representations about benchmarking or the Galaxy S4's performance on benchmarking apps, here the pertinent question is whether plaintiff has sufficiently alleged any duty to disclose on the part of Samsung.

Samsung argues for an initial limitation on the scope of any duty to disclose, asserting that for an omission to be actionable under the CLRA, UCL or FAL, it must be "related to safety concerns." Dkt. No. 57 at 8. Some federal courts have adopted a "safety concern" limitation and

9

those holdings can be traced back to the California Court of Appeal's decisions in *Daugherty*, 144 Cal. App. 4th 824, and *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255 (2006). Significantly, however, the California Court of Appeal itself has very recently clarified that this is a misreading of California law. In *Rutledge v. Hewlett-Packard Co.*, No. H036790, 2015 WL 4480356, at *5 (Cal. Ct. App. July 22, 2015), the court explained: "Both *Daugherty* and *Bardin* do address disclosure of defects related to safety concerns in the context of CLRA and UCL claims. However, neither *Daugherty* nor *Bardin* preclude a duty to disclose material information known to a manufacturer and concealed from a consumer." The court went on to emphasize that "[t]he *Bardin* court did not hold that a defect must be related to a safety concern to be material for purposes of fraudulent omission." *Id*. (emphasis added). In diversity cases like this one, the federal court's duty is to "ascertain and apply the existing California law," and in the absence of a pronouncement from the California Supreme Court, the federal courts are to "follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010). Consequently, pursuant to *Rutledge*, the Court rejects defendants' argument that Samsung's duty to disclose here was limited to defects relating to safety concerns.

The next question is what factors the Court should consider in determining whether Samsung had a duty to disclose. Defendants argue for the application of four factors, which the plaintiff has not opposed: whether "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." Dkt. No. 57 at 11-12. These factors were set forth and applied in the California Court of Appeal's decision in *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Some courts have questioned whether these factors are properly applied in this context. *See, e.g.*, *Gray*, 2012 WL 313703, at *4 (noting that "the California Courts of Appeal are split on whether the *LiMandri* test is properly applied to UCL and CLRA claims based on omissions"); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1174 n.2 (E.D. Cal. 2013) (same). But because the parties do not dispute that these are the factors to be

applied here, the Court does so without deciding the issue. *See id.* ("since both parties adopt the [*LiMandri*] factors in their briefs, the applicable standard is not decided in this ruling").

The Court finds that the first, third and fourth of those factors can easily be dismissed as inapplicable to this case. Plaintiff has not asserted any fiduciary relationship; the case law is clear that mere nondisclosure does not constitute "active concealment," *see*, *e.g.*, *Herron*, 924 F. Supp. 2d at 1176 (citing cases); and the Court has already found that defendants have made no representations relating to benchmarking whatsoever, so there is no partial representation on this issue.

What remains is whether Samsung's alleged manipulation of the Galaxy S4's performance on benchmarking apps -- by programming it to super-perform when it detects that benchmarking apps are being run on the phone, Dkt. No. 51 ¶¶ 20-21 -- is something that was within the "exclusive knowledge" of Samsung. Defendants argue that it was not, because "[p]laintiff alleges that publicly-available source code discloses the conduct he alleges as the basis of his complaint." Dkt. No. 57 at 12. But both of the cases cited by defendants cut against their argument.

In *Herron*, 924 F. Supp. 2d 1161, plaintiff owned a laptop manufactured by Toshiba America Information Systems, Inc., which he had purchased from Best Buy Co. Inc. Best Buy represented the laptop's battery life to be "up to 3.32 hours." This battery life measurement was alleged to have been based on Toshiba's use of the "MobileMark 2007 ('MM07') benchmark test." *Id.* at 1167. The MM07 testing was alleged to "bear[] 'no resemblance to the real-life and every day uses of laptop computers and notebooks,'" because during the test, the computer's monitor is set to a brightness level that is only 20% to 30% of the normal level, the computer's Wi-Fi, Bluetooth, and other wireless functions are disabled, and the computer's "main processor chip is set to 5% to 7.5% of its normal capacity." *Id.* Plaintiff alleged that these conditions of MM07 testing had been concealed or omitted by the defendants. *Id.*

The *Herron* court found that these allegedly concealed facts were not within defendants' exclusive knowledge. Plaintiff had admitted in his complaint that "Best Buy's website disclosed the use of MM07 testing and that *Newsweek* published an article publicly criticizing the MM07 test for the same reasons raised here by plaintiff." *Id.* at 1175. The court held defendants had no

11

duty to disclose on an exclusive knowledge theory because plaintiff "could have readily recognized any deficiencies in his laptop's battery life, and plaintiff purchased his laptop more than nine months after information criticizing MM07 was disseminated." *Id*. (internal quotation marks and brackets omitted).

Those facts are very different from the ones here. Although Norcia alleges that Samsung's "manipulations were discovered by independent testers affiliated with the website AnandTech in the summer of 2013," the first of the articles identified was not published until July 30, 2013, more than two months after plaintiff had already purchased his Galaxy S4. *See* Dkt. No. 51 ¶¶ 28, 36. Moreover, the two articles at the links provided by plaintiff (which the Court finds to have been incorporated by reference into the complaint) confirm both that the ordinary consumer would not have been able to easily discover these manipulations and that he or she would have been surprised to learn about them, given their reasonable expectations about the way benchmarking applications are utilized in the industry. *See*, *e.g.*, http://www.anandtech.com/ show/7187/looking-at-cpugpu-benchmark-optimizations-galaxy -s-4 ("Poking around I came across the application changing the DVFS behavior to allow these frequency changes – TwDVFSApp.apk. Opening the file in a hex editor and looking at strings inside (or just running strings on the .odex file) pointed at what appeared to be hard coded profiles/exceptions for certain applications. The string 'BenchmarkBooster' is a particularly telling one . . . ."). It may be that this source code is public, but that does not mean that the information revealed by the source code was easily accessible or understandable to the average consumer.

These facts are sufficient to allege that the benchmarking manipulations were within Samsung's exclusive knowledge and therefore subject to a duty to disclose. *See Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (finding exclusive knowledge factor satisfied where defendant "was in a superior position to know" allegedly concealed fact); *Daugherty*, 144 Cal. App. 4th at 838 ("'[i]n order to be deceived, members of the public must have had an expectation or an assumption about' the matter in question."). Plaintiff has adequately alleged that consumers would have had an expectation or an assumption that the kind of benchmarking manipulation alleged here would not be hidden in the source code of their phone

1   and it would have been difficult for the ordinary consumer to have discovered this issue on their
2   own.  That is enough.
3       *Gray*, 2012 WL 313703, can be distinguished for the same reason.  There, the court found
4   that plaintiffs had not "pleaded any facts indicating that Toyota had 'exclusive knowledge' that the
5   Prius's real-world fuel efficiency did not equal its EPA mileage estimates." *Id*., at *8.  But that
6   was again because "as early as May 2004 Consumer Reports publicly revealed" the alleged
7   discrepancy, and "a real-world driving test conducted that same month by a USA Today reporter"
8   found the average MPG on a long-distance trip to be lower than the EPA estimate.  *Id*.  The court
9   concluded that, "[a]s plaintiffs purchased their Prius Hybrids more than two years after this
10  information was disseminated, plaintiffs cannot show that Toyota possessed 'exclusive'
11  knowledge of these facts at the time of purchase." *Id*.  As discussed above, those are not the facts
12  here -- the alleged media attention to the benchmarking manipulation came after, not before,
13  plaintiff's purchase of the Galaxy S4.
14      Plaintiff has adequately alleged a fraudulent omission for the CLRA, UCL and common
15  law fraud claims.  The FAL claim is a different story.  There can be no FAL claim where there is
16  no "statement" at all.  *See Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal.
17  2012) ("Ms. Stanwood has not adequately pleaded a violation of the FAL.  The FAL requires an
18  untrue or misleading statement.  Ms. Stanwood's surviving concealment claims are based on
19  omissions, not misleading statements or partial representations.  Because she has not adequately
20  alleged that Mary Kay made any actual misleading or untrue statements, she cannot make out a
21  claim under the FAL.")  *Cf. Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1024 (N.D. Cal.
22  2011) (finding failure to disclose information actionable under the FAL, but not before observing
23  that both plaintiffs "describe contact with Bank of America, and explain that Bank of America
24  omitted from these conversations and communications details about Arevalo and Sandow's
25  enrollment in CPP.").  Plaintiff here has alleged no direct communications with Samsung or any
26  untrue or misleading statement by Samsung.  The FAL claim, to the extent based on a pure
27  omission theory for plaintiff's benchmarking allegations, is dismissed with prejudice.
28

## B. STORAGE CAPACITY ALLEGATIONS

For his storage capacity allegations, plaintiff does allege an actual representation by Samsung "in their advertising and on the packaging" that the Galaxy S4 has 16 GB of storage capacity. *See*, *e.g.*, Dkt. No. 51 ¶ 32. But he states that he did not read any of Samsung's own statements himself, and instead merely saw and relied on "third party statements" that "were based on" what Samsung had said. *Id.* ¶ 37.

The problem for plaintiff is that his current allegations fail to meet the pleading standard imposed by Federal Rule of Civil Procedure 9(b). Plaintiff alleges generically that he "viewed the product specifications on websites reviewing the Galaxy S4 and/or announcing the release of the Galaxy S4 that the Galaxy S4 has 16 GB of memory capacity," without giving any detail about what, exactly, he read; when these statements were published or read by him; or who authored those third party statements. *Id*. Moreover, even assuming plaintiff can proceed on an "indirect deception" theory, Dkt. No. 62 at 7, plaintiff has provided no detail about which of "Samsung's own public statements" the generic "third-party statements" he read were based on, or how and when Samsung made those statements to the third parties with the alleged intent or expectation that the third parties would repeat them to consumers like plaintiff. And plaintiff has not done enough at this point even to plausibly allege what statement was false and why. The statement that the Galaxy S4 has 16 GB of storage capacity is not obviously contrary to the alleged fact that "the preinstalled software on the Galaxy S4 uses approximately half of the 16 GB memory." Dkt. No. 51 ¶ 5. These claims are dismissed.

## CONCLUSION

The benchmarking manipulation affirmative misrepresentation claims are dismissed without prejudice to a motion to amend (under an indirect deception theory or otherwise) if warranted by evidence found in discovery. Plaintiff will have until the deadline to amend the pleadings set in the forthcoming scheduling order to make that motion. Defendants' motion to dismiss the benchmarking manipulation omission claims is denied, except that plaintiff's FAL claim based on a pure omission theory is dismissed with prejudice.

14

The storage capacity claims are dismissed subject to one last opportunity to amend. Plaintiff may amend those allegations by September 11, 2015. If plaintiff chooses to amend, defendants' response to the amended complaint is due by October 7, 2015.

In addition, the Court sets a case management conference for September 30, 2015, with a joint case management statement due by September 23, 2015. The Court expects that the parties will jointly propose a case schedule that reflects the amount of time the parties have already had to conduct discovery and otherwise move this litigation forward.

**IT IS SO ORDERED.**

Dated: August 20, 2015

_____
JAMES DONATO
United States District Judge