EDUARDO G. ROY (Bar No. 146316)
DANIEL C. QUINTERO (Bar No. 196492)
JOHN R. HURLEY (Bar No. 203641)
**PROMETHEUS PARTNERS L.L.P.**
220 Montgomery Street, Suite 1094
San Francisco, CA 94104
Tel.: 415.527.0255

ALEC CIERNY (Bar No. 275230)
**THE CIERNY FIRM**
650 California Street, Floor 7
San Francisco, CA 94108-2737
Tel.:  415.259.4646
Fax:  415.230.5777

Attorneys for Plaintiff
DANIEL NORCIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL NORCIA, on his own behalf and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     vs.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a New York Corporation, and SAMSUNG ELECTRONICS AMERICA, INC., a New Jersey Corporation,<br><br>     Defendants. | CASE NO. 3:14-cv-582-JD<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 31, 2019<br>Time: 10:00 a.m.<br>Dept.: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato<br>Complaint Filed: February 7, 2014 |

**TO THIS HONORABLE COURT, ALL PARTIES HERETO, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 31, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor of the United States District Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Plaintiff Daniel Norcia will and hereby does move for an Order:

(1)     Granting preliminary approval of the proposed settlement of this matter as a class action;

(2)     Granting certification of a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3), for settlement purposes only;

(3)     Appointing Plaintiff Daniel Norcia to serve as class representative;

(4)     Appointing Eduardo G. Roy and Daniel C. Quintero of Prometheus Partners, L.L.P. and Alec Cierny of The Cierny Firm to serve as class counsel pursuant to Federal Rule of Civil Procedure 23(g)(1);

(5)     Approving the parties' proposed plan for issuing the class notices required by Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1);

(6)     Appointing Heffler Claims Group ("Heffler") as settlement administrator to disseminate notice to the settlement class and administer the settlement;

(7)     Ordering third-party cell phone carriers Verizon Wireless, AT&T, and T-Mobile (hereafter collectively referred to as the "Cell Phone Carriers"), to compile and each produce a single excel document which identifies the name, mailing address, telephone number, email address, and date of purchase of the Cell Phone Carriers' customers who purchased a Samsung Galaxy S4 phone in the state of California between April 2013 and July 2013 (hereafter the "Class List"). And, further ordering the Cell Phone Carriers to each produce to the court appointed Settlement Administrator, Heffler Claims Group, its respective Class List within thirty (30) calendar days after the entry of the Court's Preliminary Approval Order; and

(8)     Setting a hearing, pursuant to Federal Rule of Civil Procedure 23(e)(2), to consider whether the parties' settlement should be given final approval.

1     Plaintiff's motion is based on this notice of motion and motion; the accompanying

2  memorandum in support; the declaration of Eduardo Roy as well as the attachments thereto

3  (including the proposed settlement agreement); the accompanying Administrative Motion to File

4  Under Seal portions of the declaration of Jonathan Arnold; the declaration of Alec Cierny as well

5  as the attachments thereto (including the declaration of Jonathan Arnold); and all other papers

6  filed and proceedings held in this action.

7

8  Dated:  September 26, 2019                    Respectfully submitted,

9                                               **PROMETHEUS PARTNERS L.L.P.**

10

11                                              By /s/ EDUARDO G. ROY _____
12                                                  EDUARDO G. ROY
                                                    Attorneys for Plaintiff
13                                                  DANIEL NORCIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II.  BACKGROUND .......................................................................................... 1

    A.  Factual Allegations ............................................................................. 1

    B.  Facts Specific to Plaintiff .................................................................. 3

    C.  Litigation, Discovery, and Settlement Negotiations .......................... 4

III.  ARGUMENT ............................................................................................... 6

    A.  Summary of the Settlement ................................................................. 6

        1.  Settlement Class ......................................................................... 6

        2.  Benefits to the Settlement Class ................................................ 6

        3.  Electronic Notice and Claims Process ....................................... 6

        4.  Attorneys' Fees and Incentive Awards ...................................... 7

    B.  Plaintiff's settlement with Samsung is fair, reasonable and adequate ................... 8

        1.  The strength of Plaintiff's case against Samsung; the complexity, expense and likely duration of further litigation; and the obstacle to maintaining class action status throughout trial weigh in favor of preliminary approval ........................................... 9

        2.  The Parties aggressively litigated this case for over two years, completing significant formal and informal discovery, before reaching the Settlement ............................................. 10

        3.  Class Counsel are experienced in litigating consumer class actions, particularly in the area of new technology ................................. 11

        4.  There are no "subtle signs" of collusion .................................... 12

    C.  The proposed settlement class satisfies the requirements of Rule 23 ................... 13

        1.  Numerosity .................................................................................. 14

        2.  Commonality ............................................................................... 14

        3.  Typicality .................................................................................... 15

        4.  Adequacy of Representation ....................................................... 15

        5.  The Settlement Class should be certified pursuant to Rule 23(b)(3). ....... 16

            a.  Predominance .................................................................. 16

            b.  Superiority ....................................................................... 17

    D.  Summary of the Proposed Notice ....................................................... 17

        1.  Dissemination of Notice ............................................................. 17

        2.  Claim Form ................................................................................. 18

        3.  Request for Exclusion ................................................................. 18

        4.  Claims Administration ................................................................ 18

-i-

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMIN.
APPROVAL OF CLASS ACTION SETTLEMENT; MPA // CASE NO.: 3:14-CV-582- JD

**TABLE OF CONTENTS**
(continued)

Page

E.   The notice plan provides the best notice practicable under the circumstances ................................................................................ 18

1.   The notice satisfies the content requirements of Rule 23(c)(2)(b) and 23(e). ......................................................................... 19

2.   The method of providing notice is adequate ............................. 19

F.   Plaintiff respectfully requests the Court set a schedule for final approval .......... 21

G.   Compliance with the Northern District's "Procedural Guidance for Class Action Settlements" ................................................................ 22

1.   Information about the Settlement. ............................................. 22

a.   If a litigation class has not been certified, any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case ............................. 22

b.   If a litigation class has been certified, any differences between the settlement class and the class certified and an explanation as to why the differences are appropriate in the instant case ................................................................. 22

c.   If a litigation class has not been certified, any differences between the claims to be released and the claims in the operative complaint and an explanation as to why the differences are appropriate in the instant case ............................. 22

d.   If a litigation class has been certified, any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case ............................. 22

e.   The anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise ................................... 23

f.   The proposed allocation plan for the settlement fund .................. 23

g.   If there is a claim form, an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples ........ 23

h.   In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case ...................................................... 24

2.   Settlement Administration ....................................................... 24

1

## TABLE OF CONTENTS
### (continued)

2
**Page**

3          3.     Notice ........................................................................................................ 24

4          4.     Opt-Outs .................................................................................................... 25

5          5.     Objections .................................................................................................. 25

6          6.     Attorneys' Fees ........................................................................................... 25

7          7.     Incentive Awards ....................................................................................... 26

8          8.     Cy Pres Awardees ...................................................................................... 26

9          9.     Timeline ..................................................................................................... 27

10         10.    Class Action Fairness Act (CAFA) ........................................................... 28

11         11.    Past Distributions ....................................................................................... 28

12         12.    Electronic Versions .................................................................................... 28

VI.    CONCLUSION ...................................................................................................... 28

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Abadeer v. Tyson Foods*,
No. 3:09-cv-00125 (M.D. Tenn., Nashville Division) ............................................... 24

*Abdiaziz v. Tyson Foods, USDC Kansas*,
No. 6:11-cv-01298-JTM (D. Kan.) ......................................................................... 24

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ............................................................................ 8

*Alberto v. GMRI, Inc.*
252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................ 8

*Amchem Prods., Inc. v. Windsor.*,
521 U.S. 591 (1997) .................................................................................... 13,16

*Browning v. Yahoo! Inc.*,
2007 WL 4105971, No. C04-01463 HRL (N.D. Cal. Nov. 16, 2007) ..................................... 19

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ................................................................................ 17

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ................................................................................ 9

*Cohorst v. BRE Properties, Inc.*,
2012 WL 153754, No. 10CV2666 JM(BGS) (S.D.Cal. Jan. 18, 2012) ................................... 20

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ................................................................................... 14-15

*Garcia v. Tyson Foods*,
Case No. 06-2198-JTM (D. Kan.) .......................................................................... 24

*Hall v. Best Buy Co., Inc.*,
274 F.R.D. 154 (E.D. Pa. 2011) ............................................................................ 20

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................... 9,12-13

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................... 14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
2008 WL 4178151, No. MDL-1446 (S.D. Tex. Sept. 8, 2008) ............................................ 20

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*In re Ferrero Litig.*
   583 F. App'x 665 (9th Cir. 2014) ................................................................... 7, 12

5

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................ 11

6

7

*In re M.L. Stern Overtime Litig.*,
   07-CV-0118-BTM JMA, 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ..................... 8

8

9

*In re PFF Bancorp, Inc.*,
   2011 WL 4389323, No. CV 08-01093-SVW(PLAx) (CD. Cal. April 27, 2011) .................. 20

10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ............................................................................ 20

11

12

*In re TD Ameritrade Account Holder Litig.*,
   2011 WL 4079226, Nos. C 07-2852 SBA, C 07-4903 SBA (N.D. Cal. Sept. 13, 2011) ....... 19

13

14

*Kelly v. Phiten USA, Inc.*,
   277 F.R.D. 564 (S.D. Iowa 2011) ......................................................................... 19

15

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ................................ 7-12

16

17

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ................................................................................. 15

18

19

*Linney v. Cellular Alaska P'ship.*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................................... 10

20

*Lozano v. AT&T Wireless Services, Inc.*,
   504 F.3d 718 (9th Cir. 2007) ................................................................................. 15

21

22

*Lundell v. Dell, Inc.*,
   2006 WL 3507938, No. CIVA C05-3970 JWRS (N.D. Cal. Dec. 5, 2006) ......................... 20

23

24

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................................. 15

25

*Miller v. Ghirardelli Chocolate Co.*,
   No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ............................... 7,12

26

27

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 11

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................ 14

*Officers for Justice v. Civil Serv. Comm'n.*,
    688 F.2d 615 (9th Cir. 1982)) ............................................................................. 9

*Relente v. Viator, Inc.*
    No. 12-CV-05868-JD, 2015 WL 3613713 (N.D. Cal. June 9, 2015) ................................ 7, 12

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................................................ 14

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................... 11

*Vasquez v. USM Inc*,
    No. 3:13-CV-05449-JD, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016), ........................... 7-12

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ............................................................................ 14

*West v. Circle K Stores.*,
    2006 WL 1652598 No. CIV. S-04-0438 WBS GGH (E.D. Cal. June 13, 2006) .................... 8

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ..................................................................... 10

*Wright v. Linkus Enterprises, Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009). ...................................................................... 8,13

**STATUTES/RULES**

Fed. R. Civ. P. 23. ................................................................................. Passim

**SECONDARY SOURCES**

A. Conte & H.B. Newberg, Newberg on Class Actions, § 11.25 .................................... 8

W. Rubenstein et al., Newberg on Class Actions § 11.27. ......................................... 13

-vi-

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMIN.
APPROVAL OF CLASS ACTION SETTLEMENT; MPA // CASE NO.: 3:14-CV-582- JD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Daniel Norcia ("Norcia" or "Plaintiff") and Defendant Samsung Electronics America, Inc. ("Samsung") reached an agreement that would resolve the claims asserted in this case against Samsung on a class-wide basis, subject to the approval of this Court. Accordingly, Plaintiff brings this unopposed motion for preliminary approval of a class action settlement with Samsung, and requests that the Court certify the following class for settlement purposes only:

> All persons or entities who purchased one or more 16 GB Galaxy S4 smart phones in the State of California from April 1, 2013 until July 31, 2013 (the "Class").

Plaintiff also requests that the Court approve his plan for notifying the class of certification, appointment of class representative and class counsel, and proposed settlement, as required by Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1). Finally, Plaintiff requests that the Court set a hearing to consider whether the Parties' settlement should be given final approval pursuant to Rule 23(e)(2), Fed. R. Civ. P.[1]

### II.   BACKGROUND

#### A.   Factual Allegations

Plaintiff alleges that Samsung announced the release of the Galaxy S4 smart phone ("GS4") in mid-March 2013 as an improvement on the Galaxy S III phone. (Second Amended Complaint ("SAC"), ¶ 15.) The GS4 operates on the Google Android operating system ("OS"). (*Id.*) The GS4 first became available for purchase in late April 2013, with a retail price of approximately $649.00 on its own, or approximately $249.00 when sold by wireless service providers in conjunction with a two-year wireless service contract. (SAC ¶ 16.) Samsung reported over 10,000,000 in worldwide GS4 sales by the end of 2013, many of which were sold to California residents. (Declaration of Eduardo Roy in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Roy Decl."), ¶ 11.)

Plaintiff alleges that the market for smart phones and tablets is currently dominated by

---

[1] Unless otherwise defined herein, capitalized terms have the definitions assigned to them in the Settlement Agreement attached to the Declaration of Eduardo Roy in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Ex. 1.

-1-

1  devices running on the Android OS developed by Google, and Samsung is one of several

2  manufacturers that make and market devices running on the Android OS. (SAC ¶ 17.) The OS of

3  a smart phone or tablet largely dictates the experience for the user of the device. (SAC ¶ 18.)

4  Consequently, because the Android OS is used by multiple device manufacturers (unlike Apple's

5  proprietary iOS, for example), Samsung cannot simply rely on the OS as a point of differentiation

6  to drive sales. (*Id.*) Instead, in order to gain and keep market share and revenue, Samsung must

7  differentiate its Android OS devices from all the other Android OS devices in the marketplace.

8  (*Id.*) Plaintiff alleges that, in 2013, Samsung attempted to do this through a scheme designed to

9  mislead reviewers and the public about the speed and performance of its Android OS devices,

10  including the GS4. (*Id.*)

11        Plaintiff alleges that "Benchmark" apps are programs or applications for smart phones and

12  tablets that run a set of standardized tests and trials in order to assess device performance. (SAC ¶

13  19.) By design, running the same benchmark app on different devices allows one to assess the

14  relative performance of the different devices—the device that completes the tests and trials more

15  quickly receives a higher score from the benchmarking app than the slower device. (*Id.*) Popular

16  benchmark apps for Android OS mobile devices include Geekbench, Quadrant, Antutu, Linpack,

17  and GFXBench. (*Id.*) When new mobile devices are released, reviewers commonly use

18  benchmark apps to compare the devices both to their predecessors and to the competition. (*Id.*)

19  Plaintiff further alleges that, knowing this, Samsung intentionally rigged the GS4 to operate at a

20  higher speed when it detected certain benchmarking apps. (SAC ¶ 20.)  In versions of the GS4

21  using the Qualcomm Snapdragon 600 processor, Samsung wrote code into the firmware

22  (embedded software) of the GS4 to automatically and immediately drive Central Processing Unit

23  ("CPU") voltage/frequency to their highest state, and to immediately engage all four of the

24  processing cores of the CPU. (*Id.*)

25        Plaintiff alleges that Samsung intentionally misled the public by boosting the performance

26  of the GS4. (SAC ¶ 23.) Samsung knew that publications and review sites regularly use

27  benchmarking apps to review and evaluate new devices and to compare competing devices. (*Id.*)

28  Samsung also knew that if it artificially boosted the performance of its devices when running

benchmarking apps, reviewers and the public would falsely believe that the GS4 was comparatively faster than competing devices in real-world situations. (SAC ¶ 24.) In reality, the processors run at a lower speed and the artificial performance boost disappears when the devices are performing real-world tasks instead of running benchmarking apps. (*Id.*) Plaintiff alleges that in manipulating the benchmark performance of the GS4, Samsung effectively made false representations to persons who ran benchmarking apps on the GS4, and it did so with the knowledge and/or intent that such false representations would be passed on to consumers and that it would influence their purchase decisions. (SAC ¶ 25.)

Plaintiff alleges that Samsung's representations regarding the speed and performance of the GS4 were intentionally false when made. (SAC ¶ 28.) These manipulations were discovered by independent testers affiliated with the website AnandTech in the summer of 2013. (*Id.*) As detailed in articles posted on that site, the testers found that that the firmware in the GS4 hard-coded the Quadrant, linpack, Benchmark Pi, and AnTuTu benchmarking apps by their names to automatically increase performance when they were detected. (*Id.*)

Plaintiff alleges that after the manipulations were discovered, ArsTechnica did follow-up analysis and found that the SunSpider, Rightware and Geekbench benchmarks were also affected by Samsung's manipulations. (SAC ¶ 29.) Plaintiff alleges that Samsung intentionally cheated on benchmarking apps to create a false perception regarding the speed and performance of the GS4, to thereby create PR "buzz" to increase the demand for its new devices, and to support a high price-point for these devices—all to the detriment of the buying public. (SAC ¶ 30.) Plaintiff alleges that Samsung's actions in this regard constituted false and misleading statements in that a reasonable person would consider the GS4's speed and performance in comparison to competing devices in deciding whether to purchase the GS4. (SAC ¶ 31.)

Samsung disputes these allegations, denies all wrongdoing, and contends that Plaintiff's remaining UCL claim fails as a matter of law because Plaintiff cannot show that Samsung owed him any duty to disclose.

**B.     Facts Specific to Plaintiff**

Plaintiff purchased a GS4 through a Verizon retail store on May 23, 2013, shortly after it

became available for sale in the United States. (SAC ¶ 36.) The retail price of the phone at the time of purchase was $649.99. (*Id.*) Plaintiff Norcia paid a discounted price of $249.99 (plus taxes and fees) for the phone at the time of purchase because he agreed to extend his service contract with Verizon. (*Id.*) After the GS4 was announced, and in advance of purchasing, Plaintiff read online reviews of the GS4, including reviews that discussed the GS4's speed and performance on benchmark tests. (SAC ¶ 37.) These third-party statements regarding the specifications of the GS4 were based on Samsung's own public statements regarding the specifications of the GS4, which Samsung knew, intended, and/or had reason to know would be repeated by third parties and ultimately communicated to consumers making purchase decisions. (*Id.*) At no time prior to purchase did Samsung disclose to Plaintiff that the GS4 was programmed to cheat on benchmarking tests. (SAC ¶ 38.)

## C.    Litigation, Discovery, and Settlement Negotiations

On or about February 7, 2014, Plaintiff filed his original complaint. [Dkt. 1.] On or about April 21, 2014, Samsung filed a Motion to Compel Arbitration [Dkt. 18], which the Court deferred pending a bench trial. [Dkt. 24.] On August 14, 2014, the Court conducted a bench trial, and, on August 21, 2014, the Court requested post-trial briefing [Dkt. 36.] On September 18, 2014, the Court issued its findings of fact and conclusions of law, and an order denying Samsung's Motion to Compel Arbitration. [Dkt. 41.] On October 10, 2014, Samsung filed a Notice of Appeal of the Court's ruling on the Motion to Compel Arbitration. [Dkt. 43.]

On November 10, 2014, Plaintiff filed his Second Amended Complaint ("SAC") which is the operative complaint. [Dkt. 51.] On November 24, 2014, Samsung filed a Motion to Dismiss the SAC under Federal Rules of Civil Procedure Rules 12(b)(6) and 9(b). [Dkt. 57.] On August 20, 2015, the Court granted in part and denied in part Samsung's Motion to Dismiss the SAC, ruling:

> The benchmarking manipulation affirmative misrepresentation claims are dismissed without prejudice to a motion to amend (under an indirect deception theory or otherwise) if warranted by evidence found in discovery. Plaintiff will have until the deadline to amend the pleadings set in the forthcoming scheduling order to make that motion. Defendants' motion to dismiss the benchmarking manipulation claims is denied, except that Plaintiff's FAL claim based on a pure omission theory is dismissed with prejudice.

The storage capacity claims are dismissed subject to one last opportunity to amend. Plaintiff may amend those allegations by September 11, 2015. If plaintiff chooses to amend, defendants' response to the amended complaint is due by October 7, 2015. (DKT 67).

Plaintiff did not amend the SAC. After fully briefing and arguing the appeal, on January 29, 2016, the Ninth Circuit affirmed this Court's decision denying Samsung's Motion to Compel Arbitration. [Dkt. 75.]  On June 26, 2017, Samsung filed a petition for a writ of certiorari with the United States Supreme Court regarding the Ninth Circuit's opinion [Dkt. 93], which was denied by the United States Supreme Court on October 2, 2017. [Dkt. 106.]

On August 18, 2017, Samsung moved for judgment on the pleadings. [Dkt. 94.] On October 1, 2018, the Court granted in part and denied in part Samsung's Motion for a Judgment on the Pleadings, ruling "Samsung's motion for judgment on the pleadings is denied for plaintiff's "unfair" claim under the UCL. The Court grants defendants' motion for plaintiffs' Consumer Legal Remedies Act claim, common law fraud claim, and "unlawful" and "fraudulent" UCL claims, solely on the basis of plaintiff's express non-opposition to defendants' motion for those claims." [Dkt. 133, 4:5-8.] Accordingly, the SAC is the operative complaint, and only Plaintiff's claim under the "unfair" prong of the UCL is still at issue.

On March 26, 2018, the parties attended a twelve-hour private mediation session before the Honorable Richard A. Kramer (Ret.) of JAMS. The mediation was not successful. Thereafter, the parties attended three separate settlement conference sessions with Magistrate Judge Laurel Beeler on April 18, 2018, December 4, 2018, and February 8, 2019, and conducted several months and multiple phone calls of follow-up negotiations. Although the settlement conferences were not immediately successful; with the active assistance of Magistrate Judge Laurel Beeler, Plaintiff and Samsung accepted a detailed mediator's proposal by Magistrate Judge Beeler, with minor modifications proposed by Samsung which Plaintiff accepted and Judge Beeler endorsed, which is the basis of this Agreement ("Judge Beeler's Mediator's Proposal"). [Dkt. 142.] The terms of the Settlement Agreement and the forthcoming Motion for Attorneys' Fees were all taken directly from Judge Beeler's Mediator's Proposal. (Roy Decl., ¶ 12.)

-5-

III.    **ARGUMENT**

     A.    **Summary of Settlement**

The Parties' Class Action Settlement Agreement ("Agreement") is attached to the Roy Decl. as Exhibit 1. Below is a summary of the terms and benefits in the Agreement.

        **1.    Settlement Class**

All persons or entities who purchased one or more 16 GB Galaxy S4 smart phones in the State of California from April 1, 2013 until July 31, 2013 (Agreement ¶ 37).

        **2.    Benefits to the Settlement Class**

Samsung will create a settlement fund of two million eight hundred thousand dollars ($2,800,000) (the "Settlement Fund"). (Agreement ¶ 34.) Members of the settlement class who complete and submit a claim form will be able to receive a cash payment of up to ten dollars ($10). (Agreement ¶ 4.) The exact payment amounts will be determined by the claims rate. (*Id.* ¶¶ 4, 40-45.)

In addition, Samsung has agreed for a period of three (3) years, to require the entity from which it purchases new Samsung smartphones to confirm that such smartphones have not been pre-loaded with software that detects and boosts the performance scores from benchmarking applications ("Injunctive Relief"). (Agreement ¶ 19.) Plaintiff's economics expert, Jonathan Arnold, assigns a value of $10,594,921 to the Injunctive Relief component of the class action settlement. (Declaration of Alec Cierny in Support of Administrative Motion to Seal and Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Cierny Decl."), Ex 1., Declaration of Jonathan Arnold, ¶ 11.)

The Settlement Fund component ($2,800,000) combined with the Injunctive Relief component ($10,594,921) amounts to a total settlement value to the Class of $13,394,921 ("Settlement Value").

        **3.    Electronic Notice and Claims Process**

The Settlement Administrator shall disseminate via electronic means a Short Form Notice to the Settlement Class Members for whom the Parties have identified or will identify an e-mail address. The Short Form Notice will provide a link to the Long Form Class Notice hosted on a

-6-

1   dedicated settlement website, and a unique class member ID that claimants must enter to submit

2   an online claim. The Settlement Administrator shall also provide notice of the settlement to the

3   Settlement Class by publication, and specifically, a 1/8 (or larger) page notice in USA Today on

4   two consecutive Mondays in the Marketplace — Legal Notices or Money Section, which shall not

5   occur later than twenty-five (25) business days after the Preliminary Approval Date. The

6   Publication Notice will provide a link to the Long Form Class Notice hosted on a dedicated

7   settlement website. Settlement Class Members will be able to submit claim forms through an

8   online process via the settlement website. (Agreement ¶¶ 48-55, Ex. D. (Online Claim Form).)

9   **4.    Attorneys' Fees and Incentive Award**

10          Thirty (30) days after the Court preliminarily approves the settlement and well in-advance

11   of the final approval hearing, Prometheus Partners L.L.P. and The Cierny Firm ("Class Counsel")

12   will file a separate motion for an award of attorneys' fees, expenses, and incentive awards, all of

13   which will be paid from the Settlement Fund. Class Counsel's motion will request an award of (1)

14   attorneys' fees and expenses of $1,500,000 (i.e., approximately 11.12% of the Settlement Value);

15   and (2) service award to the representative Plaintiff in the sum of $7,500. (Agreement ¶ 22.) Class

16   Counsel will provide the Court with full briefing on this request in connection with the final

17   approval hearing, but note that the amount of fees that will be requested is consistent with the

18   Ninth Circuit's benchmark for reasonableness in common fund cases that are combined with an

19   injunctive relief component with significant value. *See Relente v. Viator, Inc.*, No. 12-CV-05868-

20   JD, 2015 WL 3613713, at *3 (N.D. Cal. June 9, 2015) (It is well recognized that "injunctive relief

21   in a consumer case alleging misleading advertising is almost always likely to be an important

22   remedy."); *see In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014); *Relente*, 2015 WL

23   3613713, at *2 (N.D. Cal. June 9, 2015) (refusing to use the percentage-of-recovery method

24   because the importance of the injunction for the class cannot be readily quantified and "the

25   difficulty in accurately valuing the injunction is itself a reason to use the lodestar method, which

26   does not require making factual determinations as to what [defendant] would have done absent

27   the injunction and what the value of the injunctive relief is to [defendant's] customers"); *see*

28   *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20,

-7-

2015); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *2 (N.D. Cal. July 7, 2017), aff'd, 737 F. App'x 341 (9th Cir. 2018); *see also Vasquez v. USM Inc*, No. 3:13-CV-05449-JD, 2016 WL 612906, at *2 (N.D. Cal. Feb. 16, 2016) (relying on an expert to value an injunction, although not on a price premium basis).

### B.   Plaintiff's Settlement is Fair, Reasonable, and Adequate

The approval of a class action settlement takes place in two stages. In the first stage, a court preliminarily approves the settlement pending a fairness hearing, temporarily certifies the class, and authorizes notice to be given to the class. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008). During the second stage, after notice is given to class members, the court entertains any class member objections to the treatment of the litigation as a class action and/or to the terms of the settlement. *See id.* at 659.

During this first, preliminary approval stage, the Court determines whether the proposed settlement is "within the range of possible judicial approval." *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) (quoting A. Conte & H.B. Newberg, Newberg on Class Actions, § 11.25). The Court "need not review the settlement in detail at this juncture," because the settlement class members will be given notice of the settlement and an opportunity to be heard. *In re M.L. Stern Overtime Litig.*, 07-CV-0118-BTM JMA, 2009 WL 995864, *3 (S.D. Cal. Apr. 13, 2009). "To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

In determining whether a settlement is fair, reasonable, and adequate, courts balance several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.[2]

---

[2] A court may wait until the final approval hearing to evaluate this factor, as the class's reaction cannot be fully assessed until after dissemination of class notice. *See, e.g.*, *West v. Circle K Stores.*, 2006 WL 1652598, at *10, No. CIV. S-04-0438 WBS GGH (E.D. Cal. June 13, 2006).

-8-

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

Where the settlement is reached prior to formal class certification, courts also look to see whether any "subtle signs" of collusion are present. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). These signs include settlements that (1) give class counsel "a disproportionate distribution of the settlement"; (2) contain a "clear sailing" provision that provides for payment of fees "separate and apart from class funds"; or (3) that provide for a reversion of settlement funds to defendants. *Id.*

**1. The strength of Plaintiff's case against Samsung; the complexity, expense and likely duration of further litigation; and the obstacle to maintaining class action status throughout trial weigh in favor of preliminary approval**

If Plaintiff does not settle his claims against Samsung, Plaintiff will face a number of obstacles in litigating this case through class certification and judgment.

First, Samsung has vigorously contested liability in this case, including through two partially successful dispositive motions (motion to dismiss and a motion for judgment on the pleadings) and an appeal to the Ninth Circuit seeking the enforcement of an arbitration clause. After conducting a full trial on Samsung's Motion to Compel Arbitration, Ninth Circuit briefing and argument, and extensive briefing on two dispositive motions and multiple oral arguments at the trial court level, the case was still at issue at the trial court level but Samsung persuaded the Court to dismiss all but one claim against Samsung. Specifically, Plaintiff's sole remaining claim against Samsung is a claim under the "unfair" prong for unfair business practices under the UCL.

Second, Samsung has represented that it would continue to vigorously oppose both class certification as well as the merits of Plaintiff's claims if the case continues. While Class Counsel are confident in their ability to certify a class and to maintain class action status through trial, there are risks inherent in any litigation, including challenges in proving liability and damages, as well as the possibility that Samsung will raise meritorious defenses to the certified claims. This is especially true in class action litigation. As one court observed:

It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of

-9-

1
2
3

> example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered at settlement.

4   *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), aff'd, 440 F.2d

5   1079 (2d Cir. 1971), cert. denied, 404 U.S. 871 (1971).

6          In particular, Samsung has argued—and would continue to argue—that the Ninth Circuit

7   (as well as this and other district courts) has held that where there is no affirmative representation

8   from a manufacturer to a consumer, California law limits a manufacturer's duty of disclosure to

9   safety issues only. In addition, Samsung has argued—and would continue to argue—that Plaintiff

10   has not alleged – nor could he allege – that his omissions-based claims focused on benchmarking

11   practices raise a safety issue, and that as a result, it is impossible for Plaintiff to allege that if

12   Samsung had made the disclosures/statements Plaintiff claims it should have made, he not only

13   would have relied on those statements, but he also would have relied on a claim from Samsung

14   that the representations were "complete." While Plaintiff successfully overcame these arguments

15   during the dispositive motion stage of this litigation, Plaintiff is mindful of the complexity of this

16   case and the risk of any litigation construing the UCL. By settling this action with Samsung,

17   Plaintiff and the class avoid the uncertainty in litigating their UCL claim against Samsung.

18          Finally, Samsung has consistently argued that Plaintiff's remaining UCL claim against

19   Samsung is not suitable for class treatment. Thus, at the same time that Plaintiff and Samsung

20   were negotiating their proposed Settlement, Samsung was preparing a motion to oppose

21   Plaintiff's pending class certification motion. While Plaintiff is confident that he would prevail on

22   his class certification motion, he understands the difficulties in certifying any consumer class.

23          In summary, these factors weigh in favor of preliminary approval of the settlement.

24   **2.     The Parties aggressively litigated this case for over five years, completing significant formal and informal discovery, before reaching the Settlement**

25

26          The Court must also evaluate whether "the parties have sufficient information to make an

27   informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

28   Cir. 1998). As the Ninth Circuit reiterated, "[i]n the context of class action settlements, 'formal

-10-

1  discovery is not a necessary ticket to the bargaining table' where the parties have sufficient

2  information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*,

3  213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney*, 151 F.3d at 1239).

4        Here, the Parties engaged in over five years of active litigation including a trial on

5  Samsung's Motion to Compel Arbitration before reaching the settlement. As discussed above,

6  Samsung challenged the pleadings on multiple occasions and appealed the Court's decision on its

7  Motion to Compel Arbitration. As a result of Samsung's aggressive defense, Plaintiff only has

8  one remaining claim against Samsung for violation of the UCL.

9        Additionally, Plaintiff and Samsung have engaged in significant informal and formal

10  discovery, including both inter-party discovery, third-party discovery. Further, the depositions

11  were taken of Plaintiff and Samsung's 30(b)(6) witness in addition to the extensive written

12  discovery and document. After extensively meeting and conferring about various discovery

13  objections, Defendants produced thousands of documents, including internal emails, marketing

14  data, and financial and sales data. (Roy Decl. ¶ 13.)

15        As a result of the above-described litigation and discovery, the Parties have sufficient

16  information to make an informed decision about settlement, and this factor weighs in favor of

17  preliminary approval.

18              **3.      Class Counsel are experienced in litigating consumer class actions.**

19        The judgment and views of experienced counsel entering into a settlement are entitled to

20  considerable deference. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D.

21  Cal. 2010). In fact, "great weight" is accorded to the recommendation of counsel, who are most

22  closely acquainted with the facts of the underlying litigation. *See id.; Nat'l Rural*

23  *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Courts have

24  adopted this standard because parties represented by competent counsel are better positioned than

25  courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.

26  *See id.* at 528. Thus, courts, absent fraud, collusion, or the like, should be hesitant to substitute

27  their own judgment for that of experienced class and defense counsel. *Id.*

28        Here, Class Counsel and counsel for Samsung are well known for their respective

-11-

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMIN.
APPROVAL OF CLASS ACTION SETTLEMENT; MPA // CASE NO.: 3:14-CV-582- JD

1    experience and success in prosecuting and defending class actions, and all of the Parties' counsel

2    fully support this settlement. (Roy Decl. ¶ 15.) The fact that qualified and well-informed counsel

3    endorse the settlement as being fair, reasonable, and adequate favors this Court's approval of the

4    Settlement.

5                        **4.        There are no "subtle signs" of collusion**

6          Even though the Parties reached the Agreement prior to formal class certification, the

7    proposed settlement does not have any of the "subtle signs" of collusion that might give a court

8    pause. *See In re Bluetooth*, 654 F.3d at 947.

9          First, the Agreement was reached only after the parties attended a twelve-hour private

10   mediation session before the Honorable Richard A. Kramer (Ret.) of JAMS, three separate

11   settlement conference sessions with Magistrate Judge Laurel Beeler, conducting several months

12   and multiple phone calls of follow-up negotiations, and, with the active assistance of Magistrate

13   Judge Laurel Beeler, Plaintiff and Samsung accepted a detailed mediator's proposal by Magistrate

14   Judge Beeler which is the basis of this Agreement ("Judge Beeler's Mediator's Proposal"). [Dkt.

15   142.] The terms of the Settlement Agreement and the forthcoming Motion for Attorneys' Fees

16   were all taken directly from Judge Beeler's Mediator's Proposal.

17         Second, the Agreement does not give Class Counsel "a disproportionate distribution of the

18   settlement." *See In re Bluetooth*, 654 F.3d at 947. Class Counsel will seek attorneys' fees of

19   11.12% of the Settlement Value (Agreement ¶ 3), which is well below the Ninth Circuit's

20   established "benchmark" award for attorney fees of 25% where a common fund settlement is

21   combined with an injunctive relief component with significant value. *See Relente*, 2015 WL

22   3613713, at *3 (It is well recognized that "injunctive relief in a consumer case alleging

23   misleading advertising is almost always likely to be an important remedy."); *see In re Ferrero

24   Litig.*, 583 F. App'x at 668; *Relente*, 2015 WL 3613713, at *2 (refusing to use the percentage-of-

25   recovery method because the importance of the injunction for the class cannot be readily

26   quantified and "the difficulty in accurately valuing the injunction is itself a reason to use the

27   lodestar method, which does not require making factual determinations as to what [defendant]

28   would have done absent the injunction and what the value of the injunctive relief is to

-12-

1  [defendant's] customers"); *see Miller*, 2015 WL 758094; *Kumar* , 2017 WL 2902898, at *2; *see*

2  *also Vasquez*, 2016 WL 612906, at *2 (relying on an expert to value an injunction, although not

3  on a price premium basis).

4         Third, the Agreement does not contain a "clear sailing" provision that provides for

5  payment of fees "separate and apart from class funds." *In re Bluetooth*, 654 F.3d at 947. Class

6  Counsel's fees are paid directly from the Settlement Fund. (Agreement ¶ 68.)

7         Finally, the Agreement does not provide for a reversion of any Settlement Funds to

8  Samsung. *See id*. at 947. Any unclaimed settlement proceeds will be remitted under the *cy pres*

9  doctrine to the University of California for the Samuelson Law, Technology & Public Policy

10  Clinic at the UC Berkeley School of Law, an academic center and litigation clinic that has a close

11  substantive connection to the "driving nexus" of this action. (Agreement ¶ 45.)

12         C.      **The proposed settlement class satisfies the requirements of Rule 23**

13         Class certification for settlement purposes is relatively common and may be appropriately

14  granted so long as the requirements of Federal Rule of Civil Procedure 23 are met. *See* W.

15  Rubenstein et al., Newberg on Class Actions § 11.27 (4th ed. 2012 West). Thus, even where a

16  proposed settlement is unopposed, a court must fully examine whether the settlement satisfies the

17  Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation.

18  *See Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). There are two

19  principal differences between a request to certify a settlement-only class and a request to certify a

20  litigation class. The first is that the existence of a proposed settlement is relevant to settlement

21  only certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). For instance, the

22  settlement may aid in determining whether absent class members' interests are being adequately

23  represented, or whether the plaintiffs' claims are typical of the claims being settled by absent

24  class members. The second difference is that in considering a motion to certify a settlement-only

25  class, the Court "need not inquire whether the case, if tried, would present intractable

26  management problems . . . for the proposal is that there be no trial." *Id.* at 620.

27         An analysis of the requirements of Rule 23(a) and 23(b)(3)—referred to as numerosity,

28  commonality, typicality, adequacy, predominance, and superiority—as applied in the context of

-13-

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMIN.
APPROVAL OF CLASS ACTION SETTLEMENT; MPA // CASE NO.: 3:14-CV-582- JD

settlement show that certification of the proposed settlement class is appropriate in this case.

### 1.     Numerosity

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It need not be impossible but only difficult or inconvenient to join all members of the class. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D. Cal. 2006). Here, the proposed Settlement Class consists of approximately seven-hundred eighty thousand people. (Agreement ¶ 57.) This is far too many people to practically join in a single suit. Thus, the proposed settlement class satisfies Rule 23(a)'s numerosity requirement.

### 2.     Commonality

Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement 'serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998)). "The commonality requirement has been 'construed permissively' and its requirements deemed 'minimal.'" *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 528 (N.D. Cal. 2010). Common questions of both law and fact pervade this litigation and the remaining claim under the UCL against Samsung. Specifically, Plaintiff and the class make the common factual allegation that Samsung intentionally programmed the GS4 to run at higher-than-normal speeds when they detect certain "benchmarking" apps to create a false perception regarding the speed and performance of these devices so the public would falsely believe that the GS4 was similarly fast in real-world situations. Plaintiff's allegations all concern pre-sale activities by Samsung. Plaintiffs and the class uniformly allege that the Samsung's business practices violated the UCL. Finally, Plaintiff and the class uniformly allege that Samsung's manipulation of the benchmarking applications inflated the GS4's price which was measured with a common methodology which is directly connected to the alleged wrong that generated approximately $10,594,921 of proceeds that were acquired as a result of the benchmarking manipulations. (Cierny Declaration, Ex A., Declaration

-14-

1    of Jonathan Arnold, ¶ 11.) *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-1435 (2013)

2    (requiring a connection between the theory of liability and the methodology for calculating class

3    damages). These common factual and legal questions satisfy Rule 23(a)'s commonality

4    requirement.

5              **3.      Typicality**

6              "In determining whether typicality is met, the focus should be on the defendants' conduct

7    and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless*

8    *Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality "is satisfied when each class

9    member's claim arises from the same course of events, and each class member makes similar

10   legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d

11   Cir. 1997).

12             Here, typicality is satisfied because Plaintiff's and the class members' claims are all

13   derived from the Samsung's uniform business practices, the fact that the Samsung sold GS4s to

14   Plaintiff and the class, and the fact that Plaintiff and the class suffered the same type of damages.

15   Plaintiff's and the class members' claim against Samsung is derived from Samsung's alleged

16   unfair business practices in that Samsung intentionally programmed the GS4 to run at higher-

17   than-normal speeds when they detect certain "benchmarking" apps to create a false perception

18   regarding the speed and performance of these devices so the public would falsely believe that the

19   GS4 was similarly fast in real-world situations..

20             Because each class member's claim arises from the same course of events and centers

21   around the same legal arguments, Plaintiff has established typicality.

22             **4.      Adequacy of Representation**

23             Under Rule 23, the Court must also consider whether "the representative parties will fairly

24   and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is

25   adequate where the plaintiffs' counsel are qualified and competent to represent the class, and

26   where the class representatives do not possess interests that are antagonistic to the remainder of

27   the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

28             Here, there is no conflict between the claims of the individual class representatives and the

-15-

1  class, and Class Counsel have vigorously pursued the class's claims. Moreover, Class Counsel

2  have been appointed as class counsel in a number of class actions and have particular experience

3  in the area of violations of the UCL including defending numerous class actions. (Roy Decl., ¶¶

4  5-7,14.) Therefore, Plaintiff and Plaintiff's counsel have satisfied Rule 23's adequacy

5  requirement.

6            **5.**        **The Settlement Class should be certified pursuant to Rule 23(b)(3).**

7        In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

8  certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

9  (3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties

10  can be served best by settling their difference in a single action." 7A Charles Alan Wright, Arthur

11  R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed.1986). Plaintiff seeks

12  class certification pursuant to Rule 23(b)(3), which permits class certification upon a showing of

13  predominance and superiority—i.e., where the questions common to class members' legal claims

14  predominate over those individualized questions, and where a class proceeding is superior to any

15  alternative methods for resolving the controversy.

16               **a.**        **Predominance**

17        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

18  cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is

19  a test readily met in certain cases alleging consumer . . . fraud . . ." *Id.* at 625. "When common

20  questions present a significant aspect of the case and they can be resolved for all members of the

21  class in a single adjudication, there is clear justification for handling the dispute on a

22  representative rather than on an individual basis." Wright, A.R. Miller, & M. K. Kane, Federal

23  Practice & Procedure (2d ed. 1986), §1778, p. 121.

24        Here, the Settlement Class satisfies the predominance requirement. As discussed above,

25  members of the Settlement Class are entitled to the same legal remedies premised on the same

26  alleged wrongdoing. Because Plaintiff's claims focus on Samsung's uniform business practices,

27  common factual and legal questions overwhelm any individualized inquiries. These key common

28  factual and legal questions include:

-16-

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMIN.
APPROVAL OF CLASS ACTION SETTLEMENT; MPA // CASE NO.: 3:14-CV-582- JD

- Whether Samsung sold the GS4 that operated at a higher speed when the phones detected certain benchmarking apps?
- Whether Samsung's conduct under these circumstances amounted to unfair business practices prohibited by Business and Professions Code section 17200?
- Whether Samsung's conduct should be enjoined?
- Whether Samsung should be ordered to pay restitution?

Because liability turns on the propriety of the manner and methods by which Samsung operated its business, Rule 23(b)(3)'s predominance requirement is satisfied.

### b.    Superiority

Rule 23(b)(3)'s superiority is easily met where, as here, the claims of the individual class members are small, particularly in comparison to the overall harm suffered by the class. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). In this case, the GS4s were sold between $249 to $649 and the allegation is that the GS4s were slower than their benchmark test results (not that the GS4 did not perform), which would lead to small individual recoveries by each class member in amounts that would, at best, only qualify for hundreds of thousands of small claims actions across California. Thus, the relatively low damages of any one class member makes a class action the superior method for adjudicating these claims.

Because the class action device provides the superior means to effectively and efficiently resolve this case, and because the other requirements of Federal Rule of Civil Procedure 23 are each satisfied, certification of the proposed Settlement Class is appropriate.

### D.    Summary of the Proposed Notice

#### 1.    Dissemination of Notice

The Agreement provides for a three-pronged notice plan involving individual notice by email, a dedicated Settlement Website, and publication notice in USA Today.

Email: As part of the cell phone purchase process, Settlement Class Members provided a valid email address to Cell Phone Carriers. The Cell Phone Carriers maintained a partial database with the email address of each individual who purchased a GS4. (Roy Decl. ¶10, Exs. 2-4.) The Settlement Administrator will use information provided from the Cell Phone Carriers' databases

-17-

1   to send an individual email to each Settlement Class Member. The text of the email will contain a

2   Short Form Notice and will include a link to the Long Form Notice available on the Settlement

3   Website and a unique class member ID. *See* Agreement Ex. B (Short Form Notice) and Ex. A

4   (Long Form Notice), Ex. D. (Online Claim Form). For all emails that are returned as

5   undeliverable, the Settlement Administrator will confirm the accuracy of the addresses and resend

6   the email containing the Short Form Notice. (Agreement ¶ 58.)

7        Publication: A 1/8 page (or larger) Publication Notice will appear in USA Today on two

8   consecutive Mondays in the Marketplace—Legal Notices or Money Section. (Agreement ¶ 27.)

9        Website: A dedicated Settlement Website will be established, which will contain the

10   Settlement Agreement; relevant pleadings, motions, and orders; the Long Form Notice; the Claim

11   Form; and contact information for Class Counsel. (Agreement ¶¶ 59-60.)

12             **2.**     **Claim Form**

13        To receive benefits under the settlement, Settlement Class Members will be required to

14   submit a Claim Form with their unique class member ID. Settlement Class Members can access

15   the Claim Form on the Settlement Website. (Agreement Ex. D (Online Claim Form). Settlement

16   Class Members can complete and submit the Claim Form online through the Settlement Website.

17             **3.**     **Request for Exclusion**

18        To be excluded from the settlement, Class Members must submit a request for exclusion

19   to the Settlement Administrator within sixty (60) calendar days after the completion of the

20   dissemination of the electronic notice.

21             **4.**     **Claims Administration**

22        The Parties have agreed on the appointment of Heffler Claims Group as the Settlement

23   Administrator. (Agreement ¶ 31.) The Settlement Administrator shall be responsible for

24   administering the settlement by processing, handling, reviewing and approving claim forms

25   submitted by Settlement Class Members. Under the Agreement, the fees and expenses of the

26   Settlement Administrator will be paid from the Settlement Fund. (Agreement ¶¶ 48-61.)

27        **E.**     **<u>The notice plan provides the best notice practicable under the circumstances</u>**

28        Federal Rule of Civil Procedure 23(c)(2)(B) requires that members of a certified class be

-18-

given notice of the suit and its class action status. The class members are entitled to receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Federal Rule of Civil Procedure 23(e)(1) requires that members of a certified class be given notice of a proposed settlement. All class members who would be bound by the settlement are entitled to receive "notice in a reasonable manner." Fed. R. Civ. P. 23(c)(2)(B).

"In class-action settlements, it is common practice to provide a single notice program that satisfies both of these notice standards." *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *4 n.7, No. C04-01463 HRL (N.D. Cal. Nov. 16, 2007).

### 1.    The notice satisfies the content requirements of Rule 23(c)(2)(b) and 23(e).

Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must state:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed Long Form and Short Form Notices are adequate because they contain each of these required items of information. (Agreement Exs. A-B.) The proposed Long Form and Short Form Notices are accurate, informative, and written in plain, easy to understand language. (Agreement Exs. A-B.)

In addition, the notices satisfy the requirement of Federal Rule of Civil Procedure 23(e) because they describe the benefits to be provided under the settlement, provide Class Members with information on how to obtain a copy of the Agreement, and notify Class Members of their right to request exclusion from or object to the settlement.

### 2.    The method of providing notice is adequate

This three-pronged notice plan of individual email notice, a dedicated Settlement Website, and Publication Notice is modeled after similar notice plans that have been approved by other courts. *See, e.g., In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *10, Nos. C 07-2852 SBA, C 07-4903 SBA (N.D. Cal. Sept. 13, 2011) (notice plan consisting of individual email notice, a settlement website, and publication notice); *Browning v. Yahoo! Inc.*, 2006 WL

-19-

1    3826714, at *8-9, No. C 04-01463 HRL (N.D. Cal. Dec. 27, 2006) (same); *Kelly v. Phiten USA,*

2    *Inc.*, 277 F.R.D. 564, 569 (S.D. Iowa 2011) (same).

3         As a general rule, a notice plan that includes individual notice to the settlement class

4    supplemented by publication notice "fully satisfies the requirements of Fed. R. Civ. P. 23 and due

5    process." *In re PFF Bancorp, Inc.*, 2011 WL 4389323, at *3, No. CV 08-01093-SVW(PLAx)

6    (CD. Cal. April 27, 2011); *see also Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 168 (E.D. Pa.

7    2011) ("[T]his combination of individual and publication notice provides the best notice

8    practicable."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2008 WL 4178151, at *2,

9    No. MDL-1446 (S.D. Tex. Sept. 8, 2008) ("Generally the notice requirements of Fed. R. Civ. P.

10   23(c)(2)(B) may be met by a combination of individual notice to identifiable class members and

11   notice by publication."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450,

12   527 n.52 (D.N.J. 1997) ("Supplementing individual notice with publication notice represents an

13   appropriate balance between protecting class members and making class actions workable.").

14        Email Notice satisfies the "individual notice" requirement of Rule 23(c)(2)(B). *See e.g.,*

15   *Cohorst v. BRE Properties, Inc.*, 2012 WL 153754, at *2, No. 10CV2666 JM(BGS) (S.D.Cal.

16   Jan. 18, 2012) ("Providing Class Members with individual notice via email complies with the

17   notice requirements of Rule 23(c)(2)(B)."); *see also In re TD Ameritrade Account Holder Litig.*,

18   2011 WL 4079226, at *10 (concluding that there is no requirement that notice be given by U.S.

19   mail, even where some members did not receive individual notice because "delivery via email

20   failed"). Indeed, "[e]mail notice [is] particularly suitable" in cases such as this where the class

21   members' claims provide their email addresses as part of the transaction. *See Yahoo!*, 2007 WL

22   4105971, at *4 (citing *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1, No. CIVA C05-3970

23   JWRS (N.D. Cal. Dec. 5, 2006)).

24        Those Settlement Class Members for whom an email address is not available will receive

25   notice by publication. The published notice will also be a backup form of notice for those persons

26   whose email or postal addresses may no longer be current nor ascertainable. (However, due to the

27   2013 events at issue in this action, the email addresses should be reasonably current.)

28        In summary, the method of notice in the Agreement meets the standards of Federal Rule

of Civil Procedure 23(c) and (e) and satisfies due process by providing for individual notice to all class members via an email with a link to a dedicated Settlement Website, as well as constructive notice via publication.

**F.** **Plaintiff respectfully requests the Court set a schedule for final approval**

Assuming the Court preliminarily approves the proposed Settlement, Plaintiff must notify the Class Settlement Members of the proposed settlement. Such notice is necessary to allow Settlement Class Members an opportunity to opt-out or file any objections, and to hold a final approval hearing. Toward those ends, Plaintiff proposes the following schedule (which Samsung does not oppose) based on the terms of the Agreement:

| Event | Deadline |
|---|---|
| Deadline for Settlement Administrator to post settlement website | Five (5) days after Preliminary Approval Date |
| Publication Notice deadline | Twenty-Five (25) days after Preliminary Approval Date |
| Deadline for Third-Party Cell Phone Carriers to Produce Class Lists | Thirty (30) days after Preliminary Approval Date |
| Deadline for Class Counsel to file Motion for Attorneys' Fees and Expenses | Thirty (30) days after Preliminary Approval Date |
| Deadline to Issue Class Notice ("Class Notice Date") | Sixty (60) days after Preliminary Approval Date |
| Deadline for class members to opt-out of the settlement | Sixty (60) days after Class Notice Date |
| Deadline for class members to file objections to the settlement and/or fee application | Sixty (60) days after Class Notice Date |
| Claims Period Ends | Seventy-Five (75) days after Class Notice Date |
| Deadline for Settlement Administrator to report to parties regarding claims forms | Thirty (30) days after Claims Period Ends |
| Final Approval Hearing | Approximately 180 days after the Preliminary Approval Date |
| Effective Date | Entry of Judgment /Resolution of Appeals |
| Deadline for Defendant to Fund Settlement | Fourteen (14) days after the Effective Date |
| Deadline for Settlement Administrator to Pay | Twenty-one (21) days after the Effective Date |

| Service Award and Fee Award | |
| --- | --- |
| Deadline for Settlement Administrator to Pay on claim forms submitted by Settlement Class Members | Thirty (30) days after the Effective Date |

**G.      Compliance with the Northern District's "Procedural Guidance for Class Action Settlements"**

The Agreement complies with the Northern District's Procedural Guidance for Class Action Settlements, each item of which is addressed immediately below:

**1.      Information about the Settlement**

**a.      If a litigation class has not been certified, any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case.**

The Class has not been certified. The primary difference between the settlement class and the class proposed in the SAC is the class period. Specifically, the SAC proposed a class period capturing all sales of the GS4 (most cell phone companies introduce a new version of the same phone every twelve months). The Settlement Class period is from April 1, 2013 to July 31, 2013 because in late-July 2013, AnandTech published an article about the benchmarking issue for the public to review and consider.

**b.      If a litigation class has been certified, any differences between the settlement class and the class certified and an explanation as to why the differences are appropriate in the instant case.**

The Class has not been certified therefore this item is not addressed.

**c.      If a litigation class has not been certified, any differences between the claims to be released and the claims in the operative complaint and an explanation as to why the differences are appropriate in the instant case.**

There is no difference between the claims to be released and the claims in the SAC other than the class period described above.

**d.      If a litigation class has been certified, any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case.**

The Class has not been certified therefore this item is not addressed.

-22-

1

2

3

     **e.**     **The anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise.**

4     The exact payment amounts will be determined by the claims rate. (Agreement ¶¶ 4, 40-

5     45.) Plaintiff's economics expert, Jonathan Arnold, assigns a value of $10,594,921 to the

6     Injunctive Relief component of the class action settlement. (Cierny Declaration, Ex A.,

7     Declaration of Jonathan Arnold, ¶ 11.) The Settlement Fund component ($2,800,000) combined

8     with the Injunctive Relief component ($10,594,921) amounts to a total settlement value to the

9     Class of $13,394,921 ("Settlement Value").

10     GS4s were sold between $249 to $649, and the allegation is that the GS4s were not as fast

11     as their benchmark test results (not that the GS4 failed to perform). A simple calculation of the

12     amount that Samsung might have earned through the alleged unfair business practice over the

13     next three years had it not been discontinued ($10,594,921) and the approximate number of class

14     members (780,000),[3] creates a maximum recovery that would be approximately $13.47 per class

15     member. Here, if 120,000 (or 15.5%) or fewer class members submit claims, each class member

16     will recover $10.00 which is approximately 74% of the maximum recovery amount.

17     A detailed explanation of the factors bearing on the amount of compromise is provided

18     above at Section III(B)(1).

19          **f.**     **The proposed allocation plan for the settlement fund.**

20     Members of the settlement class who complete and submit a claim form will be able to

21     receive a cash payment of up to ten dollars ($10). (Agreement ¶ 4.) The exact payment amounts

22     will be determined by the claims rate. (Id. ¶¶ 4, 40-45.)

23

24

25

26

     **g.**     **If there is a claim form, an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples.**

     There is a claim form. Based on the considerable class action experience of Class Counsel

27

---

28   [3] The estimated class size is based on extrapolation of Samsung's national unit sales. The parties will not know the exact class size until the Cell Phone Carriers provide their respective class lists.

-23-

and review of similar consumer product class actions, Class Counsel anticipates a claims rate of 5% or less, and Heffler's settlement administration proposal estimated a claims rate of approximately 2%. (Roy Decl., ¶16.)

>    **h.**    **In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case.**

There is no reversion.

### 2.    Settlement Administration

The parties selected Heffler as the proposed settlement administrator. Both Plaintiff and Defendant independently requested quotes from their preferred class action settlement administrators. Defendants' settlement administrator provided a lower quote and reduced certain line items after comparison with Plaintiff's settlement administrator's quote. The parties instructed the settlement administrators about the agreed to methods of notice and claims payment which is described in detail above. Lead Class Counsel's firm has no history of engagements with Heffler over the last two years, but Defendant's Counsel has worked with Heffler on multiple settlements, with the most recent one closing in 2018. *See Abdiaziz v. Tyson Foods, USDC Kansas*, No. 6:11-cv-01298-JTM (D. Kan.); *Abadeer v. Tyson Foods*, No. 3:09-cv-00125 (M.D. Tenn., Nashville Division); *Garcia v. Tyson Foods*, Case No. 06-2198-JTM (D. Kan.). The parties anticipate that the administrative costs will be approximately $144,481.50, which would be approximately 5.16% of the Settlement Fund which is reasonable in the opinions of both Class Counsel and Defense Counsel. The settlement administration costs will be paid out of the Settlement Fund which will be funded by Samsung.  (Roy Decl., ¶17.)

### 3.    Notice

The parties have ensured that the class notice is easily understandable, taking into account any special concerns about the education level or language needs of the class members, and have incorporated all of the recommended and/or mandatory language included in the Northern District's Guidelines.

-24-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4.    Opt-Outs

The notice instructs class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. The notice requires only the information needed to opt out of the settlement and no extraneous information. The notice clearly advises class members of the deadline, methods to opt out, and the consequences of opting out.

### 5.    Objections

Objections comply with Federal Rule of Civil Procedure 23(e)(5). The notice instructs class members who wish to object to the settlement to send their written objections only to the Court. The notice makes clear that the Court can only approve or deny the settlement and cannot change the terms of the settlement. The notice clearly advises class members of the deadline for submission of any objections. The parties have incorporated all of the recommended and/or mandatory language included in the Northern District's Guidelines.

### 6.    Attorneys' Fees

The Settlement Fund is $2,800,000. Settlement Fund component ($2,800,000) combined with the Injunctive Relief component ($10,594,921) amounts to a total settlement value to the Class of $13,394,921 ("Settlement Value"). Class Counsel will file a separate motion for an award of attorneys' fees, expenses, and incentive awards, all of which will be paid from the Settlement Fund. Class Counsel's motion will request an award of attorneys' fees and expenses of $1,500,000 (i.e., approximately 11.12% of the Settlement Value). Class Counsel has committed approximately 2,400 attorney hours and expended $53,785 in expenses in prosecuting this action, which includes $32,659 in expert fees. Class Counsel's lodestar calculation is $2,050,000.00 for this case. Class Counsel's fee request of $1,500,000 will be a .633 negative multiplier of its lodestar calculation.

Plaintiff's expert assigns a value of $10,594,921 to the Injunctive Relief component of the settlement because it ensures that Samsung will discontinue the alleged benchmarking conduct

for a period of three years for all smartphones sold in California which will also ensure that the phones California consumers purchase from Samsung are, in fact, performing in a manner consistent with independent benchmarking applications. (Roy Decl., ¶18.)

### 7.    Incentive Awards

Plaintiff seeks an incentive/service award in the sum of $7,500. (Agreement ¶ 22.) This amount is justified as Plaintiff has litigated this case for over five years, during which he was deposed and testified at a bench trial concerning Samsung's Motion to Compel Arbitration. Furthermore, he conducted extensive retention, review, and production of documents in response to numerous rounds of discovery and deposition. Finally, Plaintiff attended each of the four mediation and settlement conference sessions telephonically despite recovering from serious surgery from a ski incident that shattered his leg. (Roy Decl., ¶19.)

### 8.    Cy Pres Awardees

Any unclaimed settlement proceeds will be remitted under the *cy pres* doctrine to the University of California for the Samuelson Law, Technology & Public Policy Clinic at the UC Berkeley School of Law, an academic center and litigation clinic that has a close substantive connection to the "driving nexus" of this action. (Agreement ¶ 45.) The Samuelson Law, Technology & Public Policy Clinic is the leading clinical program in technology law and the public interest. Through hands-on, real-world work, the Clinic trains law and graduate students in public interest work on emerging technologies, privacy, intellectual property, free speech, consumer and citizen interests in technology deployment and design, creativity, innovation, and other information policy issues. (Roy Decl., ¶20.)

As this case concerns an internet and technology product, the Samuelson Law Clinic's "dual mission: to support the public's interest in technology law and policy, and to teach law students through real-world work, with live clients, on cutting-edge policy issues" create a close correlation between its mission and the facts that give rise to the instate action. A *cy pres* award to the Clinic will assist in funding a number of its projects directly concerning law and technology such as the following three recent projects listed on its website: (Roy Decl., ¶20.)

<u>Software Copyright</u>: Samuelson Clinic students and Professor Pamela Samuelson filed an

-26-

1    amicus brief in the Supreme Court on behalf of 65 intellectual property scholars. The brief,

2    submitted in support of Google's cert petition, argues that the Supreme Court should hear the case

3    to resolve splits in circuit court interpretations of several major copyright doctrines as applied to

4    computer programs. The brief argued that the Federal Circuit's decision below disrupted the

5    relative equilibrium of more than two decades of software copyright precedents and upset settled

6    expectations within the software industry. (Roy Decl., ¶20.)

7        Design Patents and Open Source Hardware: Samuelson Clinic students and faculty,

8    working on behalf of the Open Source Hardware Association, drafted and filed an amicus brief in

9    *Curver Luxembourg, SARL v. Home Expressions, Inc.*, before the U.S. Court of Appeals for the

10   Federal Circuit. The brief argues that it is crucial to maintain the connection between the "article

11   of manufacture" specified in the patent and the scope of design patent protection. This promotes

12   innovation in industrial design and avoids unnecessary risks for the creation and sharing of open

13   source hardware design files. (Roy Decl., ¶20.)

14       Preservation of Online Video Games: Samuelson Clinic students and faculty, working on

15   behalf of the Museum of Art & Digital Entertainment, petitioned the U.S. Copyright Office for an

16   exemption to the anti-circumvention rules of the Digital Millennium Copyright Act (DMCA) to

17   aid the preservation of online video games that are no longer supported by their copyright owners.

18   If granted, this exemption will allow libraries, museums, and archives to preserve historically and

19   culturally important video games for future research and study. (Roy Decl., ¶20.)

20       Class Counsel, Alec Cierny, is a 2010 graduate of UC Berkeley School of Law. From

21   2011 to 2014, as a junior-associate at DLA Piper (US) LLP, Mr. Cierny was counsel of record for

22   a defendant in a class action entitled *Amber Marsh et al., v. Zaazoom Solutions, LLC.*, Northern

23   District of California, Case No. 3:11-cv-05226-WHO concerning remotely created checks in

24   which certain parties effectuated a class action settlement naming the Samuelson Clinic as a *cy

25   pres* recipient. (Cierny Decl., ¶10.)

26            **9.    Timeline**

27       The parties have ensured that class members have at least thirty-five days to opt out or

28   object to the settlement and the motion for attorney's fees and costs.

**10. Class Action Fairness Act (CAFA)**

The Settlement requires the settlement administrator to provide CAFA notice in accordance with 28 U.S.C. 1715 *et seq.* to the Attorney General of the United States and the attorneys general of each State or territory in which Settlement Class Members reside.

**11. Past Distributions**

Leas Class Counsel's firm provides the following information about a recent class action in table format as suggested in the Northern District's Guidelines:

| *Dietrick v. Securitas Security Services USA, Inc.*, N.D. Cal., Case No. 13-cv-05016 | |
|---|---|
| Total Settlement Fund | $2,550,000 |
| # of Class Members | 36,092 (only 12,011 required notice) |
| # Class Members Sent Notice | 12,011 |
| Method of Notice | First Class U.S. Mail |
| # / % of Claim Forms | Not Claims Made Settlement |
| Average Recovery/Class Member | $38.38 |
| Cy Pres Distribution Amount | No Cy Pres. The settlement was non-reversionary and unclaimed funds were paid to the unclaimed property funds of California. |
| Administration Costs | $125,000 |
| Attorneys' Fees and Costs | $1,025,000 |

(Roy Decl., ¶21.)

**12. Electronic Versions**

Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices are herein submitted to the presiding judge's Proposed Order (PO) email address.

**IV. <u>CONCLUSION</u>**

For the reasons stated herein, Plaintiff respectfully requests that the Court preliminarily approve the proposed settlement; certify the proposed settlement class; and order dissemination of notice reflecting class certification, appointment of class representative and Class Counsel, the

-28-

proposed settlement, the date of the fairness hearing, and other related deadlines as presented to the Court.

Dated:  September 26, 2019                    Respectfully submitted,

                                             **PROMETHEUS PARTNERS L.L.P.**


                                             By /s/ EDUARDO G. ROY
                                                 EDUARDO G. ROY
                                                 Attorneys for Plaintiff
                                                 DANIEL NORCIA

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMIN.
APPROVAL OF CLASS ACTION SETTLEMENT; MPA // CASE NO.: 3:14-CV-582- JD