United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL NORCIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, et al.,<br><br>　　　　　Defendants. | Case No. 14-cv-00582-JD<br><br>**ORDER RE FINAL APPROVAL, ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARD**<br><br>Re: Dkt. Nos. 178, 188 |

　　　　This is a consumer deception class action alleging that defendant Samsung manipulated its Galaxy S4 smartphones' performance on "benchmarking" apps, which are performance-measuring tools used by reviewers and consumers. Dkt. No. 51 ¶¶ 2-4. Samsung is said to have "rigged" the phones to detect commonly used benchmarking apps and artificially boost performance of the central and graphics processing units during the benchmarking cycle. *Id*. ¶¶ 19-22.

　　　　After years of litigation -- which included a bench trial on arbitration contract formation, the denial of arbitration, and an appeal to the Ninth Circuit, which affirmed the Court's denial of arbitration -- plaintiff Norcia was left with a single claim against Samsung under the "unfair" prong of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), based on Samsung's alleged omissions about its benchmarking manipulation. Dkt. Nos. 67, 133. Extensive settlement efforts followed, and led to a proposed class action settlement which the Court has approved on a preliminary basis. Dkt. No. 177. The proposed settlement class, which has been conditionally certified, consists of "[a]ll persons or entities who purchased one or more 16 GB Galaxy S4 smart phones in the State of California from April 2013 until July 2013." *Id*. at 2.

　　　　This order resolves Norcia's motion for final approval of class action settlement, Dkt. No. 188, and the motion for attorneys' fees and reimbursement of expenses, and plaintiff incentive

award.  Dkt. No. 178.  Final approval is granted, and the fees, expenses and incentive award requests are granted in part.

## DISCUSSION

**I.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the claims of a certified class may be settled only with the Court's approval.  Rule 23(e) outlines the procedures that apply to the proposed class settlement, including the requirement to direct notice in a reasonable manner to all class members who would be bound by the proposal.  Fed. R. Civ. P. 23(e)(1).

Under Rule 23(e)(2), the Court may approve a proposal that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

In addition, our circuit has determined that "[t]he factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d

935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Before turning to the application of these factors here, the Court confirms the certification of the proposed settlement class under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Nothing material has changed on this score since preliminary approval. The parties had initially estimated that the settlement class had approximately 780,000 members, but they have subsequently determined, through cell phone carriers' data, that the actual class size is approximately 367,000 individuals. Dkt. No. 188 at 2 & n.3. This number is more than ample for the numerosity requirement under Rule 23(a). No class member or party has challenged the propriety of the class certification, and the Court certifies a final settlement class of "all persons or entities who purchased one or more 16 GB Galaxy S4 smart phones in the State of California from April 2013 until July 2013." The Court also confirms the appointment of Daniel Norcia as class representative, as well as the appointment of Eduardo G. Roy and Daniel C. Quintero of Prometheus Partners, L.L.P., and Alec Cierny of The Cierny Firm as class counsel.

On the Rule 23(e)(1) notice requirement, the Court approved the parties' notice plan, which included email notice, two publication notices, and a settlement website. Dkt. No. 177. The parties took the extra steps of arranging for publication notice on a third occasion, providing personnel to staff a live, toll-free settlement telephone number, and providing supplemental, follow-up email notice on three separate occasions. Dkt. No. 188 at 6. The Court finds that all of this provided notice in the best practicable manner to class members who will be bound by the proposal. Fed. R. Civ. P. 23(e)(1).

For the Rule 23(e)(2) and *Churchill Village* factors, the class representative and class counsel have adequately served in those roles. As the ECF docket indicates, the settlement negotiations took a number of tries and many meetings over a long period of time, facilitated by Magistrate Judge Laurel Beeler as the settlement judge. This record establishes that the settlement agreement was negotiated at arm's length, which weighs in favor of final approval. The Court also notes that the agreement was revised to remove a "clear sailing" provision, namely

1   Samsung's agreement not to contest any requested attorneys' fees award.  *See* Dkt. No. 169-1 at
2   ECF p. 17.
3       On the adequacy of the relief provided to the class, the proposed settlement consists of
4   $2.8 million in cash to be funded by Samsung.  Class members who make valid claims will
5   receive cash payments of up to $10 per claim from this fund.  Attorneys' fees, costs, and a
6   potential incentive award are all to be paid from the fund, and then the rest is proposed to be
7   distributed to the Samuelson Law, Technology & Public Policy Clinic at the University of
8   California, Berkeley School of Law, as a *cy pres* beneficiary.  The settlement also includes an
9   injunction pursuant to which Samsung, for a period of three years, "shall require the entity from
10  which it purchases new Samsung smartphones to confirm that such smartphones have not been
11  pre-loaded with software that detects and boosts the performance scores from benchmarking
12  applications."  Dkt. No. 169-1 ¶ 46.
13      The Court finds that, on this record, the relief provided by the settlement is adequate and
14  fair.  The settlement fairly reflects the fact that plaintiff's claims were significantly cut down from
15  the four claims in the operative complaint, Dkt. No. 51, to just a portion of the UCL claim
16  following the Court's rulings on Samsung's pleadings motions.  Dkt. Nos. 67, 133.  The size of
17  the class was significantly reduced by virtue of limiting an undefined and open class period in the
18  complaint, Dkt. No. 51 ¶ 40, to a 4-month period for the settlement class.  Dkt. No. 169-1 ¶ 14.
19  For this class, the parties agree that the class members' recovery should be capped at $10 per
20  claim, and they have explained that this is because the processor at issue "cost about $20 at the
21  relevant time" and the "10-11 millisecond 'boost' that the GS4 allegedly gave to its CPU" can
22  fairly be compensated with $10 each, *i.e.*, 50% of the cost of the chipset at issue.  Dkt. No. 170 at
23  14-15.  The Court accepts that explanation, and finds that the proposed cash payout amount is fair
24  in this case.
25      The adequacy of the relief is further bolstered by the fact that the class members will
26  benefit broadly from the *cy pres* distribution to the Samuelson Clinic.  Class counsel stated in a
27  declaration that the proposed *cy pres* beneficiary is a "leading clinical program in technology law
28  and the public interest," which "trains law and graduate students in public interest work on

United States District Court
Northern District of California

4

1    emerging technologies, privacy, intellectual property, free speech, consumer and citizen interests
2    in technology deployment and design, creativity, innovation, and other information policy issues."
3    Dkt. No. 169 ¶ 20.  The Court has no doubt that the Samuelson Clinic is a worthy recipient, and in
4    any event, the *cy pres* doctrine does not "require as part of that doctrine that settling parties select
5    a *cy pres* recipient that the court or class members would find ideal.  On the contrary, such an
6    intrusion into the private parties' negotiations would be improper and disruptive to the settlement
7    process."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-21 (9th Cir. 2012).  Rather, the goal is to
8    ensure "that a *cy pres* remedy must be the 'next best distribution' of settlement funds," which
9    means that "a district court should not approve a *cy pres* distribution unless it bears a substantial
10   nexus to the interests of the class members."  *Id*. at 821.  The Court finds that a substantial nexus
11   is present here in that the Samuelson Clinic trains the next generation of practitioners on issues of
12   consumer rights and interests in the technology arena, matters that were front and center in this
13   consumer protection lawsuit over smartphone processing speeds.  Consequently, the proposed *cy*
14   *pres* distribution is approved.  The 3-year injunctive relief negotiated by the parties also adds to
15   the relief to the class, and on the whole, the adequacy of relief factor weighs in favor of final
16   approval.
17          The Court finds no issues with the proposed treatment of class members relative to each
18   other.  All class members who submit valid claims may recover up to $10 each, which will be
19   issued to them by check.
20          The reaction of class members favors final approval.  While the claims rate of
21   approximately 2.035% (7,468 claims received from approximately 367,000 class members) is not
22   necessarily something to write home about, it is on par with similar cases.  In addition, only one
23   class member has requested to be excluded from the settlement, and only a single objection was
24   filed by Steven Helfand.  This is overall a positive response.
25          As for Helfand, the Court has reviewed his deposition testimony, Dkt. No. 187, and
26   questioned him directly at the final approval hearing about his standing as a class member.
27   Helfand was not able to credibly explain his inability to provide any evidence at all which would
28   validate his alleged ownership of two Galaxy S4 phones during the class period.  Helfand has

instead stated that one of his phones was destroyed in an "insurance casualty or a situation where all of my possessions were destroyed," when he was evicted from his building by a landlord who "w[as] violating [Helfand's] civil right" and "the landlord's property manager instructed the condominium association to dispose of all of the possessions," which "were all disposed of by 1-800 Got Junk." Dkt. No. 187 at 8. Helfand stated at his deposition that his other Galaxy S4 was traded in at a "shop . . . on Van Ness" which "was like a pawn shop," *id*. at 14, though Helfand was unclear about whether he "traded both phones or one in" or if "one of the phones wasn't traded in." Dkt. No. 187 at 83-84; *see also* Dkt. No. 185 ("the phones . . . were traded in"); Dkt. No. 186 ("Helfand did not, in fact, trade-in, the second S4 Galaxy, he owned, if it even matters."). He provided other testimony at his deposition that the Court finds doubtful, for example that he purchased two Galaxy S4 phones to use as "universal controller[s] in the house" and that he purchased two of them for "different room[s]." Dkt. No. 187 at 17, 21. These are unusual facts that if true, would rather conveniently explain why no carrier has any record of Helfand's ownership of these phones.

After considering the substance of his deposition and in-court testimony, and observing his demeanor at the final approval hearing, which was held by remote access, the Court concludes that Helfand was not a credible witness, and that he did not establish that he is a member of the settlement class. The Court also notes that Helfand is a disbarred attorney who acknowledges he has "been involved in 50 or 60 cases . . . as an objector or as an attorney for objectors." Dkt. No. 187 at 36. The adverse credibility finding here is consistent with those of other courts. *See*, *e.g.*, *Collins v. Quincy Bioscience, LLC*, No. 19-22864-CIV, 2020 WL 7135528 (S.D. Fla. Nov. 16, 2020). Helfand's objections are overruled for lack of standing, and because the points he has raised lack merit for the reasons discussed in this order.

## II. ATTORNEYS' FEES

When awarding fees in a common fund case like this one, the Court has "discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. The choice between lodestar and percentage calculation depends on the circumstances, and "in common fund cases, [there is] no presumption in favor of either the

6

1   percentage or the lodestar method." *In re Washington Public Power Supply Sys. Litig.*, 19 F.3d
2   1291, 1296 (9th Cir. 1994).

3       Class counsel has asked for $1,398,861.24 in fees. Dkt. No. 178. Counsel justifies this as
4   "10.44% of the total settlement value," by relying on its expert's valuation of $10,594,921 for the
5   injunctive relief in this case and adding that to the $2,800,000 cash fund, for a "total settlement
6   value of $13,394,921." *Id*. at 1-5. Counsel further states that the requested fee is reasonable when
7   using the lodestar method because the lodestar is approximately $1,951,060, and so the requested
8   $1.398 million in fees work out to a multiplier of negative 0.72. *Id*. at 2, 5-8.

9       The Court cannot agree with plaintiff's counsel's calculation of a $13.394 million "total
10  settlement value." To start, the Court rejects the inclusion of the injunctive relief in that
11  calculation. In *Staton v. Boeing Company*, 327 F.3d 938, 945-46 (9th Cir. 2003), the circuit
12  directed that injunctive relief "should generally be excluded from the value of a common fund
13  when calculating the appropriate attorneys' fees award, as the benefit of that relief to the class
14  members is most often not sufficiently measurable." *Staton* also "decline[d] to rely in [the court's]
15  assessment of the injunctive provisions upon 'the approval of several disinterested experts'"
16  because the experts' positive assessments relied heavily on an understanding of the decree that the
17  court did not agree with. *Id*. at 961. The Court finds that rejection of plaintiff's proffered expert
18  valuation is appropriate here as well. Most critically, plaintiff's expert pursued the wrong
19  question. *See* Dkt. No. 198, Ex. A ¶ 9 ("I was engaged by Mr. Daniel Norcia to measure the
20  economic gains Samsung Electronics America, Inc. obtained, as alleged, through its unfair
21  benchmarking manipulation scheme."). Analytically, Samsung's theoretical lost profits are not
22  equivalent to "the value to individual class members of benefits deriving from injunctive relief."
23  *Staton*, 327 F.3d at 974. It is "tangible relief to class members" that matters, *id*. at 973, and that is
24  simply not what is addressed by Professor Arnold's declaration, putting aside the Court's
25  additional concerns about his data set and methods of calculating Samsung's supposed ill-gotten
26  gains.

27      While the Court has in other cases suggested that reliance on the lodestar method may be
28  useful, *see, e.g.*, *Vasquez v. USM Inc.*, No. 3:13-cv-05449-JD, 2016 WL 612906 (N.D. Cal. Feb.

16, 2016), it is not suitable here. As in *Staton*, the "record as it stands" is insufficient for a lodestar inquiry, "as it contains only the barest estimate of hours expended, with no detail." 327 F.3d at 966. Counsel has presented only summary tables of the total hours associated with each timekeeper, and then separately a table of the total hours associated with each "category of work performed." Dkt. No. 190-1 at 2-3. This does not allow the Court to query, for example, whether there was any excessive double-billing by multiple timekeepers for the same specific task.

Consequently, on these circumstances, the Court follows the path set out in *Staton*: the Court excludes the value of the injunctive relief from the value of a common fund for attorneys' fees purposes, but the Court does consider "[t]he fact that counsel obtained injunctive relief in addition to monetary relief for their clients" as a "relevant circumstance . . . in determining what percentage of the fund is reasonable as fees." 327 F.3d at 945-46. Under that approach, the Court finds it appropriate to award slightly more than the usual 25% benchmark from the $2.8 million common fund. While counsel did obtain the 3-year injunctive relief, which could generate possible benefits for some class members (those that choose to buy Galaxy S4 phones again) beyond the cash settlement fund, overall, the Court cannot say counsel obtained "exceptional results for the class" justifying anything more than 30%. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). As discussed, the settlement class size is significantly reduced from the litigation class size; the negotiated injunctive relief is not specifically targeted towards benefitting class members; and the $10 per class member payouts, while adequate, are not a wildly overwhelming success. Taking into account all of the circumstances of the case, the Court finds that 30% of the $2.8 million common fund, or $840,000.00, is an appropriate attorneys' fees award in this case.

## III. COSTS

Class counsel has also requested reimbursement of expenses in the amount of $101,138.76. That is a reasonable amount given the litigation activity that has taken place in this case, and the expenses have reasonably been explained in the declarations of counsel. Dkt. Nos. 179, 180. The requested reimbursement is granted. The settlement administrator's requested additional settlement administration costs of up to $155,500 are also approved. Dkt. No. 188 at 8.

## IV. INCENTIVE AWARD

Class counsel has requested a $7,500 incentive award for named plaintiff Daniel Norcia. Dkt. No. 178. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving $5,000 incentive awards for each of nine class representatives as reasonable where litigation was "complicated" and "took up quite a bit of the class representatives' time").

Here, the Court knows firsthand from seeing plaintiff Norcia on the witness stand during the arbitration agreement bench trial that he has put time and effort into this case, likely more than is asked of the usual named class action representative. Class counsel has also declared that plaintiff Norcia devoted "in excess of one hundred hours assisting Class Counsel in this case." Dkt. No. 179 ¶ 75. Still, $7,500 is too high, especially in comparison to the $10 that each of the other class members will be receiving. The Court awards $3,000 to Norcia.

## CONCLUSION

Final approval of the class action settlement is granted. The single opt-out is ordered excluded from the settlement. The pending objection by Steven Helfand is overruled for the reasons discussed in this order and at the final approval hearing.

Class counsel is awarded $840,000 in attorneys' fees, and ordered reimbursed $101,138.76 in litigation expenses. The settlement administrator is awarded additional costs of up to $155,500. The named class representative, Daniel Norcia, is awarded a $3,000 incentive payment.

The case will remain closed, but counsel must file the post-distribution accounting document on the ECF docket when the time comes, as required by the Northern District's Procedural Guidance for Class Action Settlements.

**IT IS SO ORDERED.**

Dated: July 20, 2021

_____
JAMES DONATO
United States District Judge